[No. A105588. First Dist., Div. Two. Dec. 28, 2004.]

SAN RAMON VALLEY FIRE PROTECTION DISTRICT, Plaintiff and
Respondent, v.
CONTRA COSTA COUNTY EMPLOYEES' RETIREMENT
ASSOCIATION et al., Defendants and Appellants.

## COUNSEL

Steefel, Levitt & Weis, Harvey L. Leiderman, Ashley K. Dunning and Jeffrey R. Rieger for Defendants and Appellants.

Julie Wynn for Board of Retirement of the Orange County Employees Retirement System as Amicus Curiae on behalf of Defendants and Appellants.

Frank O. Sieh, Noah A. Klebaum, Leroy Smith and Lori A. Nemiroff for Ventura County Employees' Retirement Association as Amicus Curiae on behalf of Defendants and Appellants.

Andrew L. Kjeldgaard for Board of Retirement of the San Bernardino County Employees' Retirement Association as Amicus Curiae on behalf of Defendants and Appellants.

Bernard C. Barmann, Sr., Stephen D. Schuett, Mark L. Nations and Patricia J. Randolph for Board of Retirement of the Kern County Employees' Retirement Association as Amicus Curiae on behalf of Defendants and Appellants.

Law Offices of William D. Ross, William D. Ross, Diane C. De Felice and Kypros G. Hostetter for Plaintiff and Respondent.

## OPINION

**RUVOLO, J.—** ██ This case requires us to decide whether litigation seeking judicial review of an action or decision by a public entity is subject to a special motion to strike under the anti-SLAPP statute, Code of Civil Procedure section 425.16,[1] merely because the challenged action or decision was taken by vote after discussion at a public meeting. Our answer is no. Even if the conduct of individual public officials in discussing and voting on

---

[1] The anti-SLAPP statute provides for the early dismissal of " 'strategic lawsuits against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).)

a public entity's action or decision could constitute an exercise of rights protected under the anti-SLAPP statute—an issue we need not and do not reach—this does not mean that litigation challenging a public entity's action or decision always arises from protected activity. In the present case, the litigation does not arise from the speech or votes of public officials, but rather from an action taken by the public entity administered by those officials. Moreover, that action was not itself an exercise of the public entity's right of free speech or petition. We therefore affirm the trial court's order denying the entity's special motion to strike.

I.

FACTS AND PROCEDURAL BACKGROUND

All of the parties to this appeal are public entities.[2] Appellant Contra Costa County Employees' Retirement Association (CCCERA) is a county retirement system established under article XVI, section 17 of the California Constitution and the County Employees Retirement Law of 1937 (CERL). (Gov. Code, §§ 31450–31899.9.) Appellant Board of Retirement of Contra Costa County Employees' Retirement Association (the Board) is the governing body of the Board.[3] Respondent San Ramon Valley Fire Protection District (District) is a special district within Contra Costa County.

The Board administers retirement benefits for employees of Contra Costa County and of various government entities within that county, including the District. In December 2000, the District entered into a memorandum of understanding with the union representing the District's employees, under which the employees' retirement benefits were increased. As both the Board and the District recognized, CERL required that the increased benefits be funded through increased contributions to the Board from the District and/or its employees. The Board therefore retained an actuary to determine the amount of those contributions.[4] In December 2002, the Board notified the District that in order to fund the increased benefits, the District would have to

---

[2] The union representing the employees whose pension benefits are involved in the litigation was named as a real party in interest in the trial court, but it has not participated in the briefing on appeal.

[3] For simplicity's sake, we will refer to CCCERA and the Board, in their roles as parties to this litigation, collectively as the Board.

[4] It is not disputed that under CERL, the cost of the increased benefits must be determined on an actuarial basis. Beyond that basic point, neither the specifics of the CERL statutory scheme (as described in our opinion in *In re Retirement Cases* (2003) 110 Cal.App.4th 426 [1 Cal.Rptr.3d 790]), nor the details regarding the parties' disagreement over the choice of an actuarial methodology, is material to our disposition of this appeal.

pay nearly $2.3 million in accrued contributions as of January 31, 2003, plus interest from that date.[5]

In February 2003, the District retained its own actuary, who disagreed with the methodology used by the Board's actuary. Meanwhile, the Board retained a different actuary, who ultimately confirmed that the methodology of the Board's first actuary was appropriate, though also recognizing that an alternative methodology could appropriately be used that would decrease the amount of the additional contribution to just under $1 million.

At a publicly noticed Board meeting on April 16, 2003, the Board's actuary made a presentation regarding the alternative methods of calculating what the District owed for the increased benefits. He characterized the original actuary's calculations as "accurate and consistent with the Board's rating policies and past practices." After discussion, the Board voted to adopt the original actuary's methodology, with the correction it had already agreed to make, thus determining that the District would have to pay nearly $2.3 million to fund the increased benefits.

The District promptly requested reconsideration. At the Board's meeting on May 7, 2003, a motion for reconsideration was moved and seconded, but the vote on the motion was split evenly at four votes in favor and four votes against. Under the Board's regulations, the motion was deemed to have failed because it did not receive five affirmative votes.

On July 8, 2003, the District initiated the litigation out of which this appeal arose by filing a combined petition for mandamus (Code Civ. Proc., § 1085[6]), petition for administrative mandamus (§ 1094.5), and complaint for declaratory relief against the Board.[7] The Board stipulated to the District's filing of an amended petition and complaint in October 2003.

The basis for the District's suit, as alleged in the petition, is the Board's "failing to comply with the mandatory duties set forth in provisions of [CERL], . . . [and] abusing its discretion by acting without the guidance of any policy or precedent in the . . . Board's April 16, 2003 action regarding imposing a higher alternative contribution on [the District] for implementation of retirement benefits, and the . . . Board's May 7, 2003 action regarding denying the District's motion for reconsideration based upon a four-to-four . . . vote." The petition also alleges that the Board "violated clear ministerial

---

[5] The $2.3 million figure reflected the Board's voluntary correction of an error in its original actuary's calculations that was brought to the Board's attention by the District.

[6] All further unspecified statutory references are to the Code of Civil Procedure.

[7] We will refer to the District's amended pleading as the District's petition or the petition.

duties by refusing to exercise their fiduciary duty to [the District] in minimizing its employer contribution consistent with the principles of [CERL]"; complains of the Board's failure to keep a verbatim record and swear in witnesses at board meetings; and asserts that the tie vote on the District's motion for reconsideration should have been treated as a failure to act on the motion rather than as a denial.

The District's petition seeks the issuance of writs of mandate, declaratory judgments, and associated equitable remedies requiring the Board to implement the increased retirement benefits based on a contribution by the District in the amount of $999,000; to void the adoption of the higher contribution rate for the District; to promulgate a consistent policy to guide the Board's decisionmaking process in setting employer contribution rates; to provide adequate findings and evidence when choosing between actuarial valuations; to comply with its own regulations to ensure a fair hearing when reviewing employer contribution valuations; and to rehear the District's motion for rehearing rather than deeming it denied by the evenly split vote.

On November 4, 2003, the Board filed a special motion to strike the petition under the anti-SLAPP statute. The District opposed the motion, and after a hearing on December 11, 2003, the trial court issued a minute order denying the motion in its entirety. The Board appealed, as permitted by section 425.16, subdivision (j).

## II.

### MOTION TO DISMISS

Before addressing the merits of the Board's appeal, we must first consider the District's motion to dismiss the appeal, which was taken under submission and deferred for consideration together with the merits. The motion argues that the appeal should be dismissed for three reasons: first, because the appeal is frivolous and taken solely for the purpose of delay; second, because the underlying motion was procedurally defective in ways that the District contends deprived the trial court of jurisdiction to consider it; and third, because the appeal was not properly authorized due to an alleged violation of the Brown Act (Gov. Code, § 54950 et seq.) with regard to the Board meeting at which the decision to appeal was made.

The District's first argument may be disposed of without extended discussion. "California courts have the inherent power to dismiss frivolous appeals. [Citations.] Of course, *it is a power that should not be used except in the absolutely clearest cases.* [Citations.]" (*People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1318 [9 Cal.Rptr.3d 844], original italics

omitted, new italics added.) "An appeal is frivolous and warrants the imposition of sanctions 'when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]' [Citations.]" (*Keitel v. Heubel* (2002) 103 Cal.App.4th 324, 337 [126 Cal.Rptr.2d 763].)

This is not such a case. The Board's position is not clearly foreclosed by statute, as was the appellant's in *People ex rel. Lockyer v. Brar, supra,* 115 Cal.App.4th at pages 1317–1319. There is no published case authority precisely on point, and as will appear in our discussion of the merits, some of the premises for the Board's arguments are well taken. Moreover, the Board's appeal cannot have been taken to "delay the effect of an adverse judgment," because no judgment has yet issued, and the Board may ultimately prevail on the merits. Accordingly, while we will ultimately conclude that the Board's arguments on appeal are not meritorious (see Discussion, *post*), they are nonetheless not frivolous, and we decline to dismiss the appeal on that ground.

The second ground for the District's motion to dismiss the appeal is that the Board's special motion to strike should have been denied due to the Board's failure to comply with two of the statute's procedural requirements. The first is the provision requiring that the caption page of the motion be served on the Judicial Council. (§ 425.16, subd. (k).) It appears that this defect has been cured, and in any event, the District does not point to anything in the record indicating that this issue was raised at the trial court. Nor does the District cite any authority, or even seriously argue, that this defect affects either the trial court's jurisdiction, or ours, to consider the merits, or that the District was prejudiced in any way by the Board's failure to comply. The District also points to no authority indicating that failure to serve a special motion to strike on the Judicial Council, standing alone, warrants the denial of the motion, much less the dismissal of an appeal after the motion is denied on the merits.

The District's second procedural argument for dismissal of this appeal is based on the Board's asserted failure to comply with the statutory requirement that the motion be set for hearing within 30 days of service unless the trial court's docket conditions require a later date. (§ 425.16, subd. (f).) In support of this argument, the District cites *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1387–1388 [129 Cal.Rptr.2d 892] (*Decker*) and *Fair Political Practices Com. v. American Civ. Rights Coalition, Inc.* (2004) 121 Cal.App.4th 1171 [18 Cal.Rptr.3d 157] (*FPPC*). Unlike the plaintiffs in *Decker* and *FPPC*, however, the District did not raise the timeliness issue in the trial court. This omission deprived the Board of an

opportunity to establish, in a forum suitable for the trial of factual issues, that the delay was due to the court's docket.

The District argues nonetheless that the issue was not waived, because *Decker* held that the 30-day time limit was "jurisdictional." *Decker* did not address the issue whether the time limit had been waived, however, because it had been squarely raised and litigated in the trial court in that case. (See *Decker, supra,* 105 Cal.App.4th at p. 1387.) The *Decker* court held that the defect was "jurisdictional" only in the sense that once the timeliness issue had been raised, if the moving party failed to make the requisite showing regarding docket conditions, the trial court had no authority to overlook the problem and decide the motion on its merits. (See *id.* at pp. 1389–1390.)

■ In other words, the 30-day period of section 425.16, subdivision (f) is not jurisdictional in the fundamental sense of subject matter jurisdiction or personal jurisdiction. Instead, it is jurisdictional in the sense that it deprives the court of power "to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942].) ■ "When a court fails to conduct itself in the manner prescribed, it is said to have acted in *excess* of jurisdiction. [Citations.]" (*People v. Williams* (1999) 77 Cal.App.4th 436, 447 [92 Cal.Rptr.2d 1] (*Williams*).) "[A]n act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time. [Citations.]" (*People v. Ruiz* (1990) 217 Cal.App.3d 574, 584 [265 Cal.Rptr. 886].)

■ Where the trial court acts in excess of its jurisdiction by reaching the merits of a matter despite the expiration of a statutory time limit, a party's failure to object in the trial court generally constitutes a waiver of the issue for appeal. (See *Williams, supra,* 77 Cal.App.4th at pp. 459–461.) Although this waiver rule is not applied when the alleged error involves a pure question of law (*ibid.*), the applicability of the 30-day time period at issue here turns on a factual question—whether "the docket conditions of the court require a later hearing." (§ 425.16, subd. (f).) Moreover, as is exemplified by the discussion in *FPPC* of the trial court's comments about its own calendaring practices (*FPPC, supra,* 121 Cal.App.4th at p. 1176), this factual question is clearly one that is best suited for resolution by the very court whose docket conditions are at issue. Because the statute is not jurisdictional in the fundamental sense, and its application depends upon a factual question, the anti-SLAPP statute's 30-day time limit is an example of a procedural issue that should be held to be waived if not raised at the trial level. Accordingly, we hold that the District cannot raise this issue for the first time in its motion to dismiss the Board's appeal.

Finally, the District's argument regarding the Brown Act violations alleged to have occurred in connection with the Board's authority to pursue the appeal appears to be based on a misunderstanding of the relevant facts and/or the applicable law. In any event, once again, the District does not cite any authority indicating that the Board's failure to touch all the required procedural bases before initially authorizing the filing of this appeal would justify us in dismissing it, over the Board's objection, at this stage in the proceedings. We therefore decline to do so.

III.

DISCUSSION

The anti-SLAPP statute provides that "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The statute posits "a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. [Citation] . . . If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citations.]" (*Navellier, supra,* 29 Cal.4th at p. 88.)

In the present case, the trial court did not reach the second step of the test, because it ruled that the petition did not arise out of acts by the Board in furtherance of its right to petition or free speech as defined in section 425.16.[8] We review the trial court's order independently, as the issues raised are purely ones of law that we consider de novo. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [116 Cal.Rptr.2d 187] (*Kajima*).)

---

[8] "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The Board contends that its decision to assess $2.3 million in additional pension contributions to fund the District's enhanced benefits, which occurred only after a public hearing and a majority vote of the Board's members, constituted "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4)). On appeal, the Board argues that the anti-SLAPP statute therefore applies because the District's petition arose from the Board members' discussions and votes in a public proceeding, which were acts in furtherance of their constitutionally protected right to free speech.

We have no doubt that a public official or government body, just like any private litigant, may make an anti-SLAPP motion where appropriate. (See *Mission Oaks Ranch, Ltd. v. County of Santa Barbara* (1998) 65 Cal.App.4th 713, 730 [77 Cal.Rptr.2d 1] (*Mission Oaks*), disapproved on other grounds in *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123, fn. 10 [81 Cal.Rptr.2d 471, 969 P.2d 564]; *Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1113–1116 [57 Cal.Rptr.2d 207]; see also *Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 183–184, fn. 3 [118 Cal.Rptr.2d 330] (*Schroeder*).) We also recognize that, in an appropriate case, a petition for mandamus may be subject to a special motion to strike just like any other form of action. (See, e.g., *Moraga-Orinda Fire Protection Dist. v. Weir* (2004) 115 Cal.App.4th 477 [10 Cal.Rptr.3d 13] [mandamus petition seeking to strike or modify ballot argument constituted a SLAPP suit].) Moreover, although we need not and do not reach the issue here because no individual Board member was sued by the District, we note that there is support for the argument that the protection accorded by the anti-SLAPP statute extends to statements made by public officials at an official public meeting, and perhaps also to their votes. (See *Schroeder*, *supra*, 97 Cal.App.4th at pp. 183–184, fn. 3; see also *Stella v. Kelley* (1st Cir. 1995) 63 F.3d 71, 75; *Brewer v. D.C. Financial Responsibility and Manag.* (D.D.C. 1997) 953 F.Supp. 406, 408–410.)

However, there is nothing about the Board's collective action in requiring the District to make additional contributions to the CCCERA in the amount specified by the Board's actuary that implicates the rights of free speech or petition. As our Supreme Court has put it, "the mere fact an action was filed after protected activity took place does not mean it *arose from* that activity. The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.] [¶] . . . California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such

an act, whether or not the purported basis for the suit is that act itself.' [Citation.]" (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76–77 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*Cotati*), first italics added, second italics in original, quoting *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1002 [113 Cal.Rptr.2d 625].)

■ Put slightly differently, "[t]he [anti-SLAPP] statute's definitional focus is . . . [whether] the defendant's activity *giving rise to his or her asserted liability* . . . constitutes protected speech or petitioning. [Citation.]" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1232 [132 Cal.Rptr.2d 57], italics added.) Thus, the fact that a complaint alleges that a public entity's action was taken as a result of a majority vote of its constituent members does not mean that the litigation challenging that action *arose from* protected activity, where the measure itself is not an exercise of free speech or petition. Acts of governance mandated by law, without more, are not exercises of free speech or petition. "[T]he defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]" (*Cotati, supra,* 29 Cal.4th at p. 78, italics in original.)

In *Cotati,* the Supreme Court held that a special motion to strike should not have been granted in a state court declaratory relief action that was filed in response to a federal declaratory relief action between the same parties, raising the same issues. The court reasoned that the state court action arose from the underlying controversy that had prompted the federal litigation, rather than from the filing of the federal litigation itself, and thus did not fall within the scope of the anti-SLAPP statute. (*Cotati, supra,* 29 Cal.4th at pp. 74, 80.)

To similar effect is *State Farm General Ins. Co. v. Majorino* (2002) 99 Cal.App.4th 974 [121 Cal.Rptr.2d 719], which involved a special motion to strike an insurance company's complaint for declaratory relief as to coverage, filed against its insureds and the third parties who had sued them. The court held that the declaratory relief action was not a SLAPP suit because "the act that underlies and forms the basis for [the insurer's] declaratory relief action is not the personal injury lawsuit filed by [the third parties], but the [insureds'] tender of the defense of that lawsuit . . . . [¶] . . . [T]he action for declaratory relief *arose* from the tender of defense and the terms of [the] insurance policy . . . , not from the litigation process itself. [Citation.]" (*Id.* at p. 977, italics in original; see also *Benasra v. Mitchell Silberberg & Knupp* (2004) 123 Cal.App.4th 1179, 1186–1189 [20 Cal.Rptr.3d 621] [reversing order granting special motion to strike, reasoning that former client's action against attorneys for breach of duty of loyalty arose from attorneys' acceptance of

representation adverse to former client, not from statements attorneys made in course of that representation].)

Courts have applied the same analysis to suits allegedly arising out of the right of petition in the administrative context. For example, in *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308 [135 Cal.Rptr.2d 903], the court held that a suit against landlords by a city rent control board, seeking declaratory and injunctive relief with regard to allegedly illegal rents, was not subject to an anti-SLAPP motion. The landlords argued in support of their special motion to strike that the suit was a SLAPP because it was prompted by their filing of administrative paperwork with the Board. The court assumed arguendo that the paperwork was a form of protected petitioning activity, but still rejected the landlords' argument that the anti-SLAPP statute applied, reasoning that the suit did not *arise* from the filing of the paperwork, but rather from the landlords' act of charging allegedly unlawful rents. (*Id.* at pp. 1317–1318.)

*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388 [126 Cal.Rptr.2d 560] (*Gallimore*) presents another example of the distinction between a suit arising from protected activity, and a suit that was prompted by protected activity but did not arise from it. In *Gallimore*, an insurance company was sued for allegedly mishandling claims filed against it. The allegations of the complaint were based in part on information contained in written reports that the company had filed with the Department of Insurance, and the insurer argued that the anti-SLAPP statute therefore barred the lawsuit. (*Id.* at pp. 1393, 1399.) The Court of Appeal rejected this argument, which "confuses [the insurer's] allegedly *wrongful acts* with the *evidence* that [the] plaintiff will need to prove such misconduct." (*Id.* at p. 1399, italics in original.) The court concluded that the anti-SLAPP statute did not apply, because the suit arose from the insurer's alleged claims handling misconduct, not from its activity in communicating information to the Department of Insurance. (*Ibid.*)

As to the Board's substantive action in the present case, there is nothing about that decision, qua governmental action, that implicates the exercise of free speech or petition. The Board's resolution was simply to impose a requirement that the District pay a contribution to the CCCERA of nearly $2.3 million for proposed enhanced retirement benefits to District employees. Thus, while the District's petition arises out of the Board's adoption of the $2.3 million contribution rate, the *substance* of the Board's action does not constitute the exercise of the Board's right of speech or petition. Somewhat ironically, parenthetical dictum in *Schroeder*, *supra*, 97 Cal.App.4th 174, a case relied on by the Board, actually supports the District's position, and illustrates the distinction we address directly.

In *Schroeder*, an individual sued a city, its city council, and four city council members, alleging that the defendants' program to increase voter registration was an illegal expenditure of public funds, because its true purpose and effect was to campaign in favor of a particular ballot measure. (*Schroeder, supra,* 97 Cal.App.4th at pp. 179, 181.) The Court of Appeal upheld the trial court's order granting the defendants' special motion to strike, finding that the plaintiff had not made the requisite prima facie showing on the merits. (*Id.* at pp. 184–190.) Significantly, the body of the court's opinion did not address the first prong of the statutory analysis, because the plaintiff *conceded,* both in the trial court and on appeal, that his "causes of action challenged acts of [the defendants] taken in furtherance of [their] rights of free speech or petition." (*Id.* at p. 183.)

However, in a footnote, the *Schroeder* court commented on the argument of an amicus curiae that the first prong of the anti-SLAPP statute did not apply "because government has no rights of speech or petition protected by the First Amendment." (*Schroeder, supra,* 97 Cal.App.4th at pp. 183–184, fn. 3.) Although declining to rule on this argument because it was raised for the first time on appeal, and was contrary to a concession by the parties, the court indicated that it believed the statute would apply on the particular facts of that case. (*Ibid.*) In so doing, it noted that insofar as the lawsuit targeted the council members individually, the asserted "basis for their liability was premised on their *vote* in favor of adopting the [voter registration] program, and voting is conduct qualifying for the protections afforded by the First Amendment. [Citations.]" (*Ibid.,* italics in original.) We need not decide here whether an action against individual lawmakers, challenging their vote cast in the exercise of individual legislative prerogative, would properly be held to arise from conduct in the furtherance of the exercise of speech rights, protected by section 425.16. Even if so, as we have already noted, that is not the conduct challenged by the District's petition.

The *Schroeder* footnote also opined in dictum that "[i]nsofar as [the] lawsuit sought relief against the governmental entity," it was likewise subject to the anti-SLAPP statute. (*Schroeder, supra,* 97 Cal.App.4th at pp. 183–184, fn. 3.) In that respect, however, the court's reasoning was somewhat different. Noting that the theory of the plaintiff's case was that "a governmental entity is barred from advocating the *content* of the [voter registration] program," (*ibid.,* italics in original) the court stated that "in analogous cases in which a governmental agency was sued *based on the content of its speech,* the courts have permitted the agency to invoke section 425.16 [citations] or other First Amendment based protections. [Citations.]" (*Ibid.,* italics added.) On this point, although we agree with the *Schroeder* court's conclusion, it provides no support for the Board's position in the present case.

As noted, the Board was not sued based on the content of speech it has promulgated or supported, nor on its exercise of a right to petition. The action challenged consists of charging the District more for certain pension contributions than the District believes is appropriate. This is not governmental action which is speech-related. By contrast, if the action taken by the Board had been to authorize participation in a campaign to amend state pension laws, or to become actively involved in a voter initiative seeking such changes, then the Board's own exercise of free speech might be implicated. But this is not the case, and this distinguishing feature is dispositive of the Board's argument.

The Board's argument to the contrary relies on *Mission Oaks, supra*, 65 Cal.App.4th 713. *Mission Oaks* is easily distinguishable. In *Mission Oaks*, a disgruntled developer sued a county and its environmental consultant for damages, alleging that the environmental impact report prepared by the consultant was a sham, and was prepared as part of a conspiracy to deny the plaintiff the right to develop its property. (*Id.* at p. 720.) The court held that the trial court properly found the suit to be a SLAPP, and granted the defendants' special motion to strike. The suit arose out of the submission of the environmental impact report to the county, and the court not surprisingly held that this act constituted speech in connection with an issue of public concern under consideration by a legislative body. (*Id.* at pp. 727–729.) Significantly, the court in *Mission Oaks* distinguished the action before it, which it held was a SLAPP, from a petition for administrative mandamus, which it noted would have been "the proper remedy to challenge the propriety of government actions on such matters" as alleged CEQA violations and improper denial of development permits. (*Id.* at p. 730.)

Because we conclude that the Board did not meet its burden of establishing that the District's action constituted a SLAPP suit, and that the motion to strike was properly denied on that ground, we need not consider whether the District failed to demonstrate that its action was likely to succeed on the merits. (*Cotati, supra*, 29 Cal.4th at pp. 80–81; *Kajima, supra*, 95 Cal.App.4th at pp. 934–935.) If the District's challenge to the Board's decision is indeed wholly devoid of merit, as contended by the Board and the amici who have filed briefs in support of its position, the Board has any number of procedural tools at its disposal to bring that to the attention of the trial court. (Cf. *Cotati, supra*, 29 Cal.4th at p. 78, fn. 4; *Kajima, supra*, 95 Cal.App.4th at p. 934; *Gallimore, supra*, 102 Cal.App.4th at p. 1400.) All we hold is that a motion to strike under the anti-SLAPP statute is not one of them.

 To decide otherwise would significantly burden the petition rights of those seeking mandamus review for most types of governmental action.

Many of the public entity decisions reviewable by mandamus or administrative mandamus are arrived at after discussion and a vote at a public meeting. (See generally 9 Witkin, Cal. Procedure (4th ed. 1997) Administrative Proceedings, §§ 8–13, pp. 1061–1068 [Bagley-Keene Open Meeting Act]; *id.*, §§ 15–24, pp. 1069–1079 [Brown Act].) If mandamus petitions challenging decisions reached in this manner were routinely subject to a special motion to strike—which would be the result if we adopted the Board's position in this case[9]—the petitioners in every such case could be forced to make a prima facie showing of merit at the pleading stage. While that result might not go so far as to impliedly repeal the mandamus statutes, as the District contends, it would chill the resort to legitimate judicial oversight over potential abuses of legislative and administrative power, which is at the heart of those remedial statutes. It would also ironically impose an undue burden upon the very right of petition for those seeking mandamus review in a manner squarely contrary to the underlying legislative intent behind section 425.16.

---

[9] At oral argument, counsel for the Board dismissed this problem, taking the position that section 425.17, subdivision (b) would exempt most mandamus petitions seeking review of decisions made at public hearings from section 425.16, because such petitions generally seek to obtain relief for the general public or for a class (§ 425.17, subd. (b)(1)) and to enforce a right affecting the public interest (§ 425.17, subd. (b)(2)). This may be true, but the point remains that adopting the Board's position in this case would permit anti-SLAPP motions to be filed in response to a significant number of mandamus petitions which, while arising out of decisions made at open meetings, do not seek relief on behalf of the public or of a class. These would include, for example, petitions seeking to overturn the denial of a planning or zoning permit applied for by an individual property owner (see, e.g., *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 644–649 [47 Cal.Rptr.2d 29] [petition for administrative mandamus under section 1094.5 was exclusive remedy for homeowners challenging quasi-adjudicatory city council decision, made after public hearing, conditioning grant of zoning variance on removal of existing patio deck]; *Langsam v. City of Sausalito* (1987) 190 Cal.App.3d 871, 878–882 [235 Cal.Rptr. 672] [petition for ordinary mandamus under section 1085 was correct vehicle for judicial review of city council's quasi-legislative decision, following public hearing, upholding denial of building permit]); petitions seeking review of decisions by local rent control agencies denying rent increases sought by individual landlords (see, e.g., *Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 286–287 [82 Cal.Rptr.2d 569] [local mobilehome rent control board's final decision limiting rent increase allowed at particular mobilehome park, adopted at public hearing, was reviewable by writ of mandate]); and various other petitions affecting the rights of specific persons or entities rather than the general public. (See, e.g., *Santa Ana Tustin Community Hospital v. Board of Supervisors* (1982) 127 Cal.App.3d 644, 649, 653 [179 Cal.Rptr. 620] [decision by county board of supervisors, after public hearing, not to designate particular hospital as "tertiary" trauma center was subject to mandamus challenge by hospital under section 1085 rather than section 1094.5].)

# IV.

## DISPOSITION

The motion to dismiss the appeal is denied. The order denying the special motion to strike is affirmed.

Kline, P. J., and Haerle, J., concurred.