Filed 11/15/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARY ANNA WHITEHALL, | |
| Plaintiff and Respondent, | E065672 |
| v. | (Super.Ct.No. CIVDS1513975) |
| COUNTY OF SAN BERNARDINO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan F. Foster, Judge.  Affirmed.

Kessel & Associates, Elizabeth M. Kessel and Victoria N. Jalili for Defendant and Appellant.

Law Offices of Valerie Ross, Valerie Ross for Plaintiff and Respondent.

Plaintiff, Mary Anna Whitehall, was a social worker for the San Bernardino County Children and Family Services (CFS or the County) who sought legal advice pertaining to any liability she might have for submitting misleading information and doctored photographs to the juvenile court at the direction of her superiors.  Her counsel

prepared a filing for the juvenile court to apprise it of the falsified information, and plaintiff was immediately placed on administrative leave for disclosing confidential information to an unauthorized person. Upon being informed she would be terminated for the breach, plaintiff resigned her position and filed a whistle blower action against the County. The County filed a special motion to strike the complaint as an Anti-SLAPP action, pursuant to Code of Civil Procedure, section 425.16, which was denied by the trial court. The County appealed.

On appeal, the County asserts that the trial court erred in determining that plaintiff had established the second prong of the criteria to overcome a special motion to strike an Anti-SLAPP lawsuit by finding a likelihood she would prevail because the County's actions were not privileged or covered by governmental immunity. We affirm.

## BACKGROUND

Plaintiff was a social worker for San Bernardino County CFS. In July 2013, another social worker, Eric B., was assigned to investigate a case in which a nine-month old baby died under suspicious circumstances. Four older children were placed in protective custody and, after the detention hearing, plaintiff was assigned to investigate for the jurisdiction/disposition hearing, in a capacity referred to as a "J/D writer."

In her capacity as J/D writer, plaintiff obtained the police report which corroborated Eric B.'s concerns for the safety of the other children, and photographs of the family home where the baby lived at the time of death, showing filthy conditions, including feces on the floor. These photographs confirmed the description of the house

2

by social worker Eric B., and a report of doctors who examined the four siblings showed ligature marks on the wrists and ankles of the children, as well as burn marks. However, the deputy director of CFS instructed plaintiff to withhold certain photographs and to provide other photographs that had been altered. Plaintiff later learned that CFS never provided a complete police report to the court.

Worried that the court would have an inaccurate picture of the home, plaintiff gave the assigned deputy county counsel a computer disk containing all the photographs obtained from the police. Shortly after providing this information to county counsel, plaintiff was removed from the case and was instructed not to discuss the case with the new J/D writer, which was unusual, given that a J/D writer ordinarily included interviews and information obtained from other social workers who have worked on a case. Then plaintiff learned that the original social worker, Eric B., had been fired, allegedly for exaggerating the condition of the house and reporting the smell of methamphetamine. However, the information provided by Eric B. had been confirmed by another social worker who had assisted him during the initial response, as well as by the police report.

In the meantime, a new trial had been ordered on the alleged basis that Eric B. had lied, and the case had been assigned to a different judge. All the previously presented evidence had been marked confidential with instructions that the new judge would not view it. Concerned for the safety of the four siblings of the dead baby, plaintiff, Eric B., and the social worker who had assisted him during the initial response decided to inform the juvenile court that a fraud had been perpetrated on the court by filing a motion.

3

Plaintiff met with attorney Valerie Ross to discuss her potential liability, after which attorney Ross drafted a declaration for plaintiff containing that information. The three social workers filed a motion[1] to inform the juvenile court that CFS had perpetrated a fraud upon the court by telling the court that social worker Eric B. had lied and by instructing plaintiff to withhold evidence and provide altered photographs to the court and counsel.

Six days after filing the motion, plaintiff was placed on administrative leave for two months. The county's reasons for placing plaintiff on administrative leave were to initiate an internal investigation regarding plaintiff's potential violation of County rules and policies barring the disclosure of confidential information to unauthorized persons. The County asserted that social workers, including J/D writers, are overseen by supervisors and managers who are required to review the underlying case and supporting evidence, and determine whether the recommendations are appropriate.

CFS further explained that its supervisors have the final say in determining what evidence to present to the juvenile court and what recommendations to make, pursuant to a Memorandum of Understanding between the County and the San Bernardino Public Employees Association, which delegates such discretionary authority to management. Thus, the County maintained that plaintiff's allegation regarding presentation of photographs to the juvenile court was within CFS's management discretion.

---

[1] The social workers submitted declarations to the juvenile court in a petition filed pursuant to Welfare and Institutions Code section 388.

After being on administrative leave for approximately two months, the County decided to terminate plaintiff for violating the confidentiality policy, but Plaintiff resigned to avoid being fired. On September 25, 2015, plaintiff filed a complaint against the County and CFS based on whistleblower liability and retaliation. (Lab. Code, § 1102.5) On November 25, 2015, the County filed a Special Motion to Strike the Complaint as a SLAPP Suit, pursuant to Code of Civil Procedure, section 425.16, alleging that the plaintiff's complaint was predicated upon the County's petitioning activity, and asserting plaintiff could not demonstrate a probability of prevailing because the County was immune, plaintiff had not been subjected to an adverse employment action, and because plaintiff had unclean hands.

On December 30, 2015, the motion was heard, argued, and denied by the trial court. The County appealed.

## DISCUSSION

The County argues that although the trial court properly found that plaintiff's action arose out of the County's protected petitioning activity under Code of Civil Procedure section 425.16, it erroneously concluded that plaintiff had established a probability of prevailing on the merits of her whistleblower claim. Specifically, the County argues that it is immune from liability, that its investigation into plaintiffs conduct as well as its activities in the juvenile court were privileged. Additionally, the County argues that the court erred in determining that plaintiff had suffered an adverse employment action for purposes of establishing a claim of retaliation, and that the County

5

had legitimate, non-retaliatory business reasons for its actions. Finally, the County argues that the court erroneously denied the motion to strike where plaintiff had unclean hands. We disagree.

### a. Principles Relating to Anti-SLAPP Motions

SLAPP is an acronym for strategic lawsuit against public participation. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 40.) Code of Civil Procedure section 425.16, the anti-SLAPP statute, authorizes a trial court to strike a cause of action against a person arising from that person's exercise of the constitutional rights to free speech and petition for redress of grievances. The statute was enacted to discourage lawsuits brought primarily to chill the valid exercise of these constitutional rights. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312.) A proceeding under this section is referred to as a "special motion to strike."

"In determining whether the anti-SLAPP statute applies in a given situation, we analyze whether the defendant's act underlying the plaintiff's cause of action *itself* was an act in furtherance of the right of petition or free speech." (*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.) We employ a two-step process: we must determine whether the challenged cause of action is one arising from protected activity (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479), and, if so, whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 448-449.)

The party bringing the motion to strike has the initial burden of making a prima facie showing that the lawsuit qualifies as a SLAPP suit; if it does not, the motion to strike may be summarily denied without putting the plaintiff to the burden of establishing the probability of success on the merits. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 820, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68; see also *Flatley v. Mauro, supra,* 39 Cal.4th at p. 315.) "'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.'" (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 675, quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

We review an order granting or denying a special motion to strike under Code of Civil Procedure section 425.16 de novo. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) We consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (Code of Civ. Proc., § 425.16, subd. (b)(2); *Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.) "However, we neither 'weigh credibility [nor] compare the weight of the evidence; . . . [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by plaintiff as a matter of law. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

### A. *Protected Activity*

A SLAPP action arises from any act of the defendant person in furtherance of the

person's right of petition or free speech. (Code Civ. Proc., § 425.16, subd. (b)(1).) Such an act includes, among other things, any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest (Code Civ. Proc., § 425.16, subd. (e)(3)), or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. (Code Civ. Proc., § 425.16, subd. (e)(4).)

A claim "arises from" protected activity when that activity underlies or forms the basis for the claim. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.) "'The mere fact that an action was filed after protected activity took place does not mean that the action arose from that activity for purposes of the anti-SLAPP statute.'" (*Id.* at p. 1063, citing *Navellier v. Sletten, supra,* 29 Cal.4th at p. 80.) Instead, the focus is on determining what the defendant's activity is that gives rise to his or her asserted liability, and whether that activity constitutes protected speech or petitioning. (*Navellier, supra,* at p. 92.) "It is important to note that the anti-SLAPP statute does not immunize or insulate defendants from *any* liability for claims arising from protected activity. It only provides a procedure for weeding out, at an early stage, such claims that are meritless." (*San Diegans for Open Government v. San Diego State Univ. Research Foundation* (2017) 13 Cal.App.5th 76, 95, citing *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384; *Navellier, supra,* 29 Cal.4th at p. 89.)

In ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements, forming the basis for liability. (*Park v. Board of Trustees, supra,* 2 Cal.5th at p. 1063.) Additionally, a trial court must distinguish between speech or petitioning activity that is mere evidence related to liability, and liability that is based on speech or petitioning activity. (*Wilson v. Cable News Network, Inc.* (2016) 6 Cal.App.5th 822, 832.) "[T]he statute does not automatically apply simply because the complaint refers to some protected speech activities." (*Wilson, supra,* 6 Cal.App.5th at p. 832, citing *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.)

Thus, where board members' statements, made during a public meeting, might constitute protected activity, subsequent governmental action relating to matters discussed at the meeting do not necessarily implicate the exercise of free speech of petition. (*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 355.)

In *San Ramon Valley Fire Protection, supra,* 125 Cal.App.4th 343, the Contra Costa County Employees' Retirement Association (county retirement board) held hearings before voting to decide to fund the Fire Districts retirement using increased contributions from the Board and/or its employees. The Fire Protection District filed an administrative mandamus petition and an action seeking declaratory judgment challenging the decision. The county retirement board filed a special motion to strike the

complaint pursuant to Code of Civil Procedure section 425.16, on the ground that the action arose from its rights to petition and free speech, specifically, the public hearings.

There, the trial court denied the motion and the reviewing court affirmed that ruling, concluding that the mere fact an action was filed after protected activity took place does not mean it *arose from* that activity. (*San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn., supra*, 125 Cal.App.4th at p. 353, citing *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77.) Instead, the court explained that the anti-SLAPP statute's definitional focus is on whether the defendant's activity giving rise to his or her asserted liability constitutes protected speech or petitioning. (*San Ramon Valley Fire Protection Dist., supra,* at p. 354, citing *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1232.)

A similar conclusion is compelled here. The County's conduct of an investigation into employee wrongdoing, like the public hearings in *San Ramon Valley Fire Protection Dist., supra,* may be a proper exercise of its speech or petition rights. However, the act of placing plaintiff on administrative leave, with the intention of firing her, did not arise from the County's protected activity. It was in retaliation for plaintiff's act of revealing to the juvenile court the manipulation of evidence in a dependency case. Had plaintiff sued the specific supervisors who conducted the investigation on behalf of the County, a clear case of a SLAPP suit would have been established. But the plaintiff challenged the retaliatory employment decision, not the process that led up to that point. The County's

10

act of placing plaintiff on administrative leave, with the intention of terminating her employment, was not an exercise of its petitioning or free speech rights. Although the trial court found that the action arose from the County's petitioning activity, we are not persuaded.

Other decisions involving whistleblower actions support our conclusion. A whistleblower claim pursuant to Labor Code section 1102.5, subdivision (b), precludes an employer from retaliating against an employee for disclosing information that may evidence improper government activity, if the purpose of the disclosure was to remedy the improper situation. (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 670.)

"[T]he anti-SLAPP statute was not intended to allow an employer to use a protected activity as the means to discriminate or retaliate and thereafter capitalize on the subterfuge by bringing an anti-SLAPP motion to strike the complaint." (*Nam v. Regents of University of California* (2016) 1 Cal.App.5th 1176, 1190-1191.)

Similarly, in *Martin v. Inland Empire Utilities Agency* (2011) 198 Cal.App.4th 611 [Fourth Dist., Div. Two], this court affirmed the denial of an anti-SLAPP motion notwithstanding the Agency's claim that its actions of eroding plaintiff's responsibilities and reducing plaintiff's staff were privileged communications made in the proper discharge of official duties. (*Id.* at p. 618.) We concluded that the gravamen of plaintiff's action was one of racial and retaliatory discrimination, not an attack on the defendants for evaluations of plaintiff's performance as an employee. (*Id.,* at p. 625,

11

citing *Dept. of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1284.) Because we review a trial court's ruling on an anti-SLAPP motion de novo, we conclude that the lower court should have determined that the County had not met the first prong under Code of Civil Procedure section 425.16. However, because neither party challenged this finding, we turn to the second prong.

### B. *Probability of Prevailing on the Merits*

Where an action arises from protected activity, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the merits. (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928.) "[T]he plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citation.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821; see also *Navellier v. Sletten, supra,* 29 Cal.4th at pp. 88-89.)

The plaintiff's burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiffs and assess the defendants' evidence only to determine if it defeats the plaintiffs' submission as a matter of law. (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) Only a cause of action that lacks "even minimal merit" constitutes a SLAPP. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89.) A plaintiff opposing an anti-SLAPP motion cannot

12

rely on allegations in the complaint, but must set forth evidence that would be admissible at trial. (*Overstock.com, Inc., supra,* at p. 699, citing *Ampex Corp. v. Cargle* (2005) 128 Cal.App.4th 1569, 1576.) The plaintiff may rely on affidavits to substantiate the claim's legal sufficiency. (Code Civ. Proc., § 425.16, subd. (b)(2).)

The plaintiff's burden to establish the "minimal merit" prong of Code of Civil Procedure section 425.16, subdivision (b)(1) (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 95, fn. 11) has been likened to that in opposing a motion for nonsuit or a motion for summary judgment. (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 584-585.) A plaintiff is not required "to *prove* the specified claim to the trial court[;]" rather, so as to not deprive the plaintiff of a jury trial, the appropriate inquiry is whether the plaintiff has stated and substantiated a legally sufficient claim. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 412; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 675.)

Here, the temporal proximity between the plaintiff's report and the County's action of placing plaintiff on administrative leave reflects a direct connection. While the County claimed it was investigating plaintiff's disclosure of confidential information, this explanation was insufficient to establish a legitimate reason where the county counsel to whom the information was disclosed was the department's legal representative in the dependency action. Plaintiff thus stated a sufficient claim that the action arises from protected petitioning activity. Additionally, disclosure to the court cannot be viewed as public disclosure of confidential information where the County CFS is deemed an arm of

13

the court, and where dependency case files are maintained confidentially by that court. Finally, as the trier of fact charged with the duty of making sensitive placement information, the County's claim of management discretion in deciding what information the court will be able to consider could call into question the legitimacy of all dependency judgments.

Having determined—albeit incorrectly--that part of plaintiff's claim was predicated upon protected conduct, the burden shifted to plaintiff to demonstrate that she has stated and substantiated a legally sufficient claim under the whistleblower statute.

### 2. *Immunity*

The County argues that the trial court erred because of the provisions of Government Code sections 815.2, 820.2, and 821.6. However, Government Code section 815.2, subdivision (b), pertains to vicarious liability upon a public entity. (See *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 989, fn. 9, citing *Bradford v. State of California* (1973) 36 Cal.App.3d 16, 20.) Government Code section 820.2 provides that a public employee is not liable for injuries resulting from acts or omissions where the act or omission was the result of the exercise of discretion vested in him, and section 821.6 provides that a public employee is not liable for injury caused by instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he or she acts maliciously and without probable cause.

None of these Government Code sections apply because the plaintiff's whistleblower action was not instituted against a public *employee.* "A wrongful

14

termination action is viable where the employee alleges he [or she] was terminated for reporting illegal activity which could cause harm, not only to the interests of the employer but also to the public." (*Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 725, citing *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 670-671; *Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1418-1420.) "An action brought under the whistleblower statute is inherently such an action." (*Southern Cal. Rapid Transit Dist., supra,* at p. 725.) To preclude a whistleblower from revealing improper conduct by the government based on confidentiality would frustrate the legislative intent underlying the whistleblower statues. For reasons of public policy, actions against a public entity for claims of discharge from or termination of employment grounded on a whistleblower claim are not barred by governmental immunity. (*Southern Cal. Rapid Transit Dist., supra,* 30 Cal.App.4th at p. 726.)

### 3. *Privilege*

Defendant also argues that its investigation into plaintiff's misconduct was privileged. However, there is no privilege cited by the County that authorizes the cover up of an alleged fraud upon the court. It is disturbing that none of the declarations presented by the County in support of its motion alleged that plaintiff's claims of evidence manipulation were false. Social services agencies reports are treated as substantive evidence in juvenile dependency cases based on a presumption that they are prepared by disinterested parties in the regular course of their professional duties, embodying elements of objectivity and expertise lending to them a degree of reliability

15

and trustworthiness. (See *In re Malinda S.* (1990) 51 Cal.3d 368, 377.) The County's position that supervisors have final say in determining what evidence to present to the juvenile court, notwithstanding the results of the J/D writer's investigation, threatens to undermine the presumption of reliability and trustworthiness. Because these reports are relied upon by the juvenile court in making life-changing decisions affecting families that come before it, the reliability and objectivity of the information in the reports is a matter of great concern.

We acknowledge that employers have the authority to discipline employees for acts of wrongdoing, and we accept the County's representations that supervisors have the final word on the nature of the evidence presented to the juvenile court in dependency cases. However, we know of no privilege that authorizes the County to present manipulated or falsified evidence, and no privilege authorizing retaliation against a public employee for disclosing a possible fraud upon the court. The County was not entitled to immunity, and its actions were not privileged.

### 4. *Adverse Employment Action*

Defendant also argues that placing plaintiff on administrative leave was not an adverse employment action because she remained on the payroll. However, plaintiff also had been removed from the dependency case to which she had been assigned as J/D writer prior to being placed on administrative leave. Plaintiff alleged in a declaration in opposition to the County's motion that while on administrative leave and under investigation, she was made aware of the County's intention to fire her The County's

16

Human Resources Officer acknowledged that she had recommended terminating plaintiff's employment. Two administrative review hearings were conducted to alleged wrongdoing by plaintiff in disclosing confidential information to an unauthorized person. Plaintiff resigned to avoid being fired, so as not to harm her chances of finding employment.

In determining whether a plaintiff suffered an adverse employment action, we employ the same standard of materiality that the California Supreme Court held should be applied to employment retaliation claims made under the California Fair Employment and Housing Act (FEHA). (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1381, citing *Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1051.) In *Yanowitz,* our Supreme Court reasoned that an adverse employment action is one that that materially affects the terms, conditions, or privileges of employment. (*Yanowitz v. L'Oreal USA, Inc., supra*, 36 Cal.4th at p. 1051.) As the Court reasoned, "Retaliation claims are inherently fact-specific, and the impact of an employer's action in a particular case must be evaluated in context. Accordingly, although an adverse employment action must materially affect the terms, conditions, or privileges of employment to be actionable, the determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim." (*Ibid.*)

17

In *Patten,* an action involving a whistleblower claim under Labor Code section 1102.5, the reviewing court found there was a triable issue of fact as to whether a lateral transfer of a young principal from one school to another constituted an adverse employment action. The court noted that in context, the school district had taken actions reasonably likely to impair her job performance, notwithstanding the fact she was transferred into a comparable position. There, the lack of administrative support and scheduling and budgetary issues had to be considered along with the knowledge that the district planned to close the school to which plaintiff had been transferred. (*Patten v. Grant Joint Union High School Dist., supra,* 134 Cal.App.4th at p. 1390.)

Federal cases, while employing a slightly different standard, agree that administrative leave may constitute an adverse employment action. (See *Dahlia v. Rodriguez* (9th Cir. 2013) 735 F.3d 1060, 1078, citing *Coszalter v. City of Salem* (9th Cir. 2003) 320 F.3d 968, 975.) Here, plaintiff did not request the administrative leave, and it was not intended as a reward or accommodation to plaintiff, given that the County acknowledged the leave was for the purpose of investigating plaintiff's alleged wrongdoing. Further, we must view the County's conduct in context, and in this case plaintiff's administrative leave coincided with the firing of the original social worker assigned to the case. The trial court correctly found that the act of placing plaintiff on administrative leave was an adverse employment action.

Here, defendant's own evidence in support of its special motion to strike confirmed its intention to fire plaintiff for disclosing to the juvenile court the County's

18

attempt to manipulate evidence in a child dependency action. The administrative leave pending the investigation, which included two hearings, and the fact the decision had been made to terminate plaintiff's employment, establishes the adverse nature of the administrative leave. The court correctly found that plaintiff had established an adverse employment action.

### 5. *Unclean Hands*

Finally, the County argues that the court erred in finding plaintiff demonstrated a probability of prevailing because her unclean hands were a complete defense, where plaintiff disclosed confidential information to an unauthorized person. "[T]he equitable doctrine of unclean hands applies when a plaintiff has acted unconscionably, in bad faith, or inequitably in the matter in which the plaintiff seeks relief." (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 432.) The unclean hands defense can serve as a defense to employment-based claims. (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 56.) However, "[e]quitable defenses such as unclean hands may not . . . be used to wholly defeat a claim based on a public policy expressed by the Legislature in a statute." (*Salas v. Sierra Chemical Co., supra,* at pp. 414, 432.) The whistleblower statute is a public policy expressed by the Legislature.

In the present case, plaintiff disclosed evidence manipulation to her attorney, whom she consulted to determine what her liability might be for signing her name and filing an altered report and allowing doctored photographs to be submitted to the court, and to ascertain what she could do to protect the children who were the subject of the

19

dependency action in which the doctored evidence was submitted at the direction of her superiors. Because the information was disclosed in the context of seeking legal advice during a confidential communication, indeed, a privileged communication, the disclosure to the attorney does not fit the traditional "disclosure of confidential information" violation that would give rise to discipline. Instead, a more rational interpretation of the County's confidentiality policy is to preclude public dissemination of confidential information by a county employee.

Further, the disclosure to the deputy county counsel to whom the dependency case had been assigned cannot be viewed as an improper disclosure because county counsel represents the County CFS in dependency proceedings. (See Cal. Juvenile Dependency Practice (Cont. Ed. Bar 2017), §14.3 County Counsel as Organization's Attorney, p. 1244.) As for the disclosure to the court by way of the motion, we have already noted that CFS investigates abuse and neglect as an arm of the court, so the court was entitled to the information, which is maintained in confidential files, unavailable to the public. (Welf. & Inst. Code, §§ 825.5 [maintenance of court files and records in juvenile cases], 827 [juvenile files inspection, confidentiality].)

We do not think the County's nondisclosure policy contemplates discipline for required disclosures to the court and county counsel, where such disclosure is required in the course of representing the County and CFS in actions brought on behalf of a child within the court's jurisdiction. Otherwise, every social worker would be subject to

investigation and discipline, including termination of employment, for filing *any* social worker's report.

The whistleblower statute is based on a public policy expressed by the Legislature. That policy would be completely thwarted if the County could retaliate with impunity against any employee who deigned to reveal improper conduct by the County. (See *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 229-230; *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 90 [allowing defendant to discharge plaintiff with impunity after he sought to halt or eliminate defendant's alleged inspection practices would undermine the important and fundamental public police favoring safe air travel].) The County's claim of unclean hands brings to mind the image of Prefect Louis exclaiming his shock at hearing gambling was occurring at Rick's American Café while counting his winnings in the movie Casablanca. The trial court correctly found there was no unclean hands barring plaintiff's action based on public policy.

### 6. *Attorneys Fees*

The County also sought attorney's fees for the anti-SLAPP motion, for work done in the trial court and in the court of appeal. Because the defendant is not the prevailing party, it is not entitled to such fees or costs.

**DISPOSITION**

The judgment is affirmed.  Plaintiff is entitled to costs on appeal.

CERTIFIED FOR PUBLICATION

RAMIREZ                

                                                                     P. J.


We concur:

CODRINGTON         
                      J.

FIELDS            
                      J.