Filed 6/5/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ROBIN RUDISILL, | B289179 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS170185) |
| v. | |
| CALIFORNIA COASTAL COMMISSION et al., | |
| Defendants; | |
| XINGYUN, LLC et al., | |
| Real Parties in Interest and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. James C. Chalfant, Judge. Reversed.

Rosario Perry for Real Parties in Interest and Appellants.

Venskus & Associates and Sabrina Venskus for Plaintiff and Respondent.

_____

The trial court awarded sanctions in the form of attorney fees against Real Parties in Interest Xingyun LLC (Xingyun), 422 Grand Blvd LLC (422 Grand), 424 Grand Blvd LLC (424 Grand), and 426 Grand Blvd LLC (426 Grand) (collectively, Real Parties) for filing a frivolous motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[1]  The anti-SLAPP motion concerned allegations in a petition for a writ of mandate (Petition) against the California Coastal Commission (Commission) and the City of Los Angeles (City) filed by several pro se petitioners.[2]  The Petition challenged various decisions by the Commission and the City concerning a development project in Venice that allegedly involved or affected property that Real Parties owned.

In denying Real Parties' anti-SLAPP motion, the trial court concluded that (1) Real Parties could not file such a motion because the Petition asserted claims only against the Commission and the City, not against Real Parties themselves; and (2) the claims in the Petition in any event did not arise from

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.  "SLAPP" is an acronym for "[s]trategic lawsuit against public participation."  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1.)

[2] All the petitioners except Robin Rudisill were subsequently dismissed, and Rudisill is the only respondent in this appeal.  However, because the Petition was originally filed by a number of individuals (who also opposed Real Parties' anti-SLAPP motion and moved for sanctions), we use the term "Petitioners" to refer both to the persons who filed this action and to respondent Rudisill.

any petitioning conduct protected under section 425.16, subdivision (e) because they challenged only official decisions amounting to "acts of governance" and not any petitioning conduct underlying those decisions.  The trial court awarded Petitioners $28,795.70 in attorney fees on the ground that no reasonable attorney would have believed that Real Parties' anti-SLAPP motion had merit.

Real Parties appeal the sanctions order, arguing that it is an issue of first impression whether a real party in interest in a mandamus proceeding is a "person" against whom a cause of action is asserted for purposes of an anti-SLAPP motion under section 425.16, subdivision (b).  They also argue that the Petition challenges their petitioning activity in seeking permits from the Commission and not just the decisions of the Commission itself.  Thus, Real Parties claim that there was a reasonable basis for their motion.  We agree and reverse.

## BACKGROUND

### 1.    The Anti-SLAPP Procedure

Real Parties have not appealed the trial court's order denying their anti-SLAPP motion.  However, they have appealed the order awarding attorney fees, which was based on the trial court's finding that Real Parties' anti-SLAPP motion was "totally and completely without merit."  (§ 128.5, subd. (b)(2).)  Thus, the merit of Real Parties' anti-SLAPP motion is the critical issue in determining whether the trial court abused its discretion in awarding sanctions.  We therefore briefly summarize the law and procedure relevant to anti-SLAPP motions.

Section 425.16 provides for a special motion to strike when a plaintiff asserts a claim arising from specified categories of constitutionally protected conduct. (§ 425.16, subd. (b)(1).)  Such

3

claims must be struck "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Ibid.*)

Thus, ruling on an anti-SLAPP motion involves a two-step procedure. First, the "moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) At this stage, the defendant must make a "threshold showing" that the challenged claims arise from protected activity. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.)

Second, if the defendant makes such a showing, the "burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral, supra*, 1 Cal.5th at p. 396.) Without resolving evidentiary conflicts, the court determines "whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*Ibid.*)

Section 425.16, subdivision (e) defines the categories of protected conduct. Those categories include "any written or oral statement or writing before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(1)–(2).)

**2.    Allegations in the Petition**

Petitioners filed their verified Petition on July 11, 2017. The Petition named the Commission and the City as respondents and identified Real Parties as the real parties in interest.

4

The Petition contains detailed allegations concerning a series of decisions made by the City and the Commission concerning a development in an area of Venice around 416–426 Grand Boulevard.[3]  While the basis for the alleged violations of law involved in these decisions is not entirely clear, the gist of the Petition appears to be that the City and the Commission processed permits (and/or permit waivers) for the demolition of existing structures and for new construction separately rather than processing those permits "together as a single permit application."  The Petition alleges that the Development should have been processed as a "Unified Development" under various applicable laws.

With respect to conduct by Real Parties, the Petition alleges that Real Parties filed applications for coastal development permits (CDP's) for demolition and new construction "during the time when the existing structures were being demolished and before the existing structures were completely demolished."  The Petition alleges that Real Parties' "filing of permits for demolition and new construction in such close time proximity constitutes a piecemealing of the demolition and the new construction, which is not allowed for a Unified Development" under various applicable laws.

The Commission denied permits concerning "demolition of the existing duplexes and new construction at 416 Grand and 418–422 Grand."  According to the Petition, Real Parties filed a

_____

[3] The Petition refers to this development as the "Grand Blvd Unified Development."  We will refer to the area of Venice that is the subject of the Petition simply as the "Development."

5

petition for a writ of mandate concerning the denial, and the superior court later ordered that the matter be remanded to the Commission so that it could "take a new action on the revised coastal development application." The Commission then allegedly approved a permit for 416 Grand. However, Real Parties withdrew their CDP applications for 426 Grand and 418–422 Grand. Petitioners allege that Real Parties withdrew the 418–422 Grand application "to avoid claims of piecemealing by Petitioners."

The Petition sought a writ of mandate ordering the Commission and/or the City to (1) set aside the decision approving the permit for 416 Grand; (2) "remand all permits pertaining to the Grand Blvd Unified Development to the City for proper processing as a single Coastal Development; and (3) "process the proposed projects for the Grand Blvd Unified Development as a single project," along with a vague reference to "any proposed new construction or development processed correctly under the Coastal Act, the Mello Act and CEQA." The Petition also contained a prayer for "reasonable attorneys' fees."

## 3.    Proceedings in the Trial Court

Real Parties filed anti-SLAPP motions. With respect to the first step of the anti-SLAPP procedure, Real Parties argued that the Petition asserted claims against them arising from protected petitioning activity. They based this argument on the allegations in the Petition claiming that Real Parties violated the law by separately filing permits for demolition and for new construction.

With respect to the second step of the anti-SLAPP procedure, Real Parties argued that Petitioners could not show a probability of success on the merits because (1) 426 Grand did not file any permit applications, was never a party to any

6

administrative proceedings, and did not own any of the property described in the Petition; (2) 424 Grand did not file any permit applications and was not a party to the administrative proceedings; (3) 422 Grand withdrew the application that it filed for a permit, and there is no project pending; and (4) Xingyun never filed any permit applications, was never a party to the administrative proceedings, and had no applications pending.

Petitioners opposed the anti-SLAPP motions and filed motions for sanctions. Their sanctions motions claimed that the anti-SLAPP motions were frivolous because (1) Petitioners did not assert any claims against Real Parties; and (2) the claims that the Petition did assert challenged the actions of the Commission and the City and did not arise from Real Parties' petitioning activity.

The trial court denied the anti-SLAPP motions and granted Petitioners' motions for sanctions. The court concluded that "[a]ny reasonable attorney who reviewed pertinent case law would agree that (a) the Petition contains no claim against Real Parties, and (b) the Petition's mandamus claims simply concern public agency decisions not subject to the SLAPP statute." After reducing the amount of attorney fees that Petitioners requested, the court awarded fees in the amount of $28,795.70, equally divided between Xingyun and the other three Real Parties.

**DISCUSSION**

**1. Standard of Review**

A trial court is required to award costs and attorney fees to a plaintiff who prevails in defending against an anti-SLAPP motion "pursuant to section 128.5" upon a finding that the motion was "frivolous or . . . solely intended to cause unnecessary delay." (§ 425.16, subd. (c)(1).) The reference to section 128.5

7

means that " 'a court must use the procedures and apply the substantive standards of section 128.5 in deciding whether to award attorney fees under the anti-SLAPP statute.' " (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 199, quoting *Decker v. U.D. Registry, Inc.* (2003) 105 Cal.App.4th 1382, 1392.)

Section 128.5 similarly provides for an award of "reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).) Frivolous means "totally and completely without merit or for the sole purpose of harassing an opposing party." (§ 128.5, subd. (b)(2).) To meet this standard, a party requesting the award must show that "any reasonable attorney would agree the motion was totally devoid of merit." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450 (*Gerbosi*).)

A trial court's ruling ordering attorney fees for a frivolous anti-SLAPP motion is usually reviewed under the abuse of discretion standard. (*Gerbosi, supra,* 193 Cal.App.4th at p. 450.) However, appellate courts generally review questions of law independently. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801.) In the context of a discretionary award of attorney fees after trial, our Supreme Court has explained that " ' "de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213.) Here, at least a portion of the trial court's ruling involves a question of law—i.e., whether, in light of the case law, a reasonable attorney

8

could conclude that a real party in interest in a mandamus proceeding is a "person" against whom the petitioner asserts a "cause of action" under section 425.16, subdivision (b)(1). Accordingly, we review that legal issue de novo. We otherwise review the trial court's decision to award sanctions for abuse of discretion.

## 2. Real Parties' anti-SLAPP Motion Was Not Devoid of Merit.

As mentioned, the trial court found that Real Parties' anti-SLAPP motion was frivolous in two respects. The court concluded that (a) the Petition contains no claim against Real Parties; and (b) the Petition challenges government decisions rather than petitioning conduct. As discussed below, neither of the trial court's stated bases for its order supports the conclusion that Real Parties' motion was "totally and completely without merit." (§ 128.5, subd. (b)(2).)

### A. *A reasonable attorney could have concluded that the Petition asserted a claim against Real Parties*

Section 425.16, subdivision (b)(1) states that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike." As our Supreme Court explained in *Baral,* the statute uses the term "cause of action" in a particular way to target "claims that are based on the conduct protected by the statute." (*Baral, supra,* 1 Cal.5th at p. 382.) The term is not limited to a specific count as pleaded in a complaint. (*Ibid.*) Thus, while an anti-SLAPP motion "does not reach claims based on unprotected

9

activity," it "may challenge any claim for relief founded on allegations of protected activity." (*Ibid.*) A claim targeted by an anti-SLAPP motion "must amount to a 'cause of action' in the sense that it is alleged to justify a remedy." (*Id.* at p. 395.)

The anti-SLAPP procedure under section 425.16 is not limited to particular kinds of claims. As our Supreme Court has explained, "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

Thus, the anti-SLAPP statute applies to writ petitions seeking a court order as well as to complaints for damages. (See *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 353 (*San Ramon*) ["in an appropriate case, a petition for mandamus may be subject to a special motion to strike just like any other form of action"].) The statute also applies to claims seeking orders affecting property rights. (See, e.g., *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 185 (*M.F. Farming*) [action for slander of title, cancelation of cloud on title, and injunctive relief]; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 126–127, 136 [action for quiet title and injunctive relief].)

Applying these principles, a reasonable attorney could have concluded that the Petition asserted a claim or claims against

10

Real Parties for purposes of the anti-SLAPP statute.[4]  The issue of whether a real party in interest in a mandamus proceeding is a "person" against whom a claim is asserted for purposes of the anti-SLAPP statute has apparently not been addressed in any reported decision.  However, as Petitioners acknowledge, by definition a "real party in interest" in a mandamus proceeding is a " ' "person or entity whose interest will be directly affected by the proceeding." ' "  (*Redevelopment Agency v. Commission on State Mandates* (1996) 43 Cal.App.4th 1188, 1197, quoting *Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987) 189 Cal.App.3d 167, 173.)  By identifying Real Parties in their Petition as real parties in interest, Petitioners therefore necessarily alleged that Real Parties had a direct interest in the proceedings.  In light of that alleged direct interest, a reasonable attorney could have concluded that, as a matter of law, Real Parties were "persons" against whom a claim was asserted under section 425.16, subdivision (b)(1).

Petitioners' particular allegations also supported the conclusion that they sought orders directly affecting Real Parties. The Petition alleged such an interest by identifying Real Parties as owners of property involved in the Development; by seeking an order directed to "all permits" pertaining to the Development; and by requesting that the orders Petitioners sought apply to "any proposed new construction or development."

---

[4] The issue presented in this appeal is only whether there was a *reasonable basis* for Real Parties' motion.  Thus, we need not, and do not, decide the broader question of whether Real Parties' arguments were legally correct, or whether they should have prevailed on their anti-SLAPP motion.

The Petition also included a claim for attorney fees. Contrary to Petitioners' argument, the request for fees on its face was not limited to a fee award against the Commission and the City. Numerous courts have awarded attorney fees under section 1021.5 against real parties in interest who actively participate in mandamus proceedings and "had a direct interest in the litigation, the furtherance of which was generally at least partly responsible for the policy or practice that gave rise to the litigation." (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1179–1181 (*Connerly*).)

Importantly, section 1021.5 authorizes an award of attorney fees "to a successful party against one or more *opposing parties* in any action which has resulted in the enforcement of an important right affecting the public interest." (§ 1021.5, italics added.) In affirming the award of attorney fees against a real party in interest in *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, the court concluded that a real party in interest who had actively participated in the litigation was a "party" for purposes of section 1021.5. The court explained that "[t]he usual meaning of the term 'party' in the context of a judicial proceeding, and as used in . . . section 1021.5, is a person ' " 'by or against whom a suit is brought.' " ' [Citation.] Although a 'party' in an action ordinarily is a plaintiff or defendant [citation], a real party in interest in a mandamus proceeding also is regarded as a party to the litigation." (*Mejia,* at p. 160, quoting *Connerly, supra,* 37 Cal.4th at p. 1176.)

The Petition alleges that Real Parties were at least partially responsible for the alleged improper "piecemealing" of the challenged development because of the permits that they filed. The Petition also alleges that real party Xingyun

12

participated in a below market sale involving related parties that "may have been done in order to evade the requirements to treat the permits for the Grand Blvd Unified Development as one project."

Thus, at the beginning of the litigation, Real Parties were both identified as entities with a direct interest in the property that was the subject of the mandamus proceeding and as participants in regulatory missteps or outright wrongdoing that, if they chose to participate in the litigation, might ultimately subject them to attorney fees as "parties." From this, it was reasonable for Real Parties to conclude that the Petition asserted claims against them.

**B.** ***A reasonable attorney could have concluded that the Petition asserted claims against Real Parties arising from protected conduct***

As mentioned, the Petition alleges that Real Parties filed permits in a manner that contributed to improper "piecemealing" of development. Based upon these allegations, Real Parties argue that they reasonably concluded the Petition's claims arose from their petitioning activity. Real Parties cite cases holding that the submission of information to government entities in connection with a permitting process is protected petitioning activity under section 425.16, subdivision (e). (See *M.F. Farming, supra,* 207 Cal.App.4th at pp. 194–195; *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 272.)

In its order, the trial court acknowledged that "[i]t is true that Real Parties made multiple CDP applications," but nevertheless concluded that "it is the agencies' approvals that are the subject of the Petition's mandamus claims." Citing *San Ramon, supra*, 125 Cal.App.4th at page 354, the trial court noted

13

that "[m]ere acts of governance are not protected activity under the anti-SLAPP statute." The court reasoned that "the Commission's and City's decisions to issue CDPs are nothing more than acts of governance made after public hearings required by law."

In *San Ramon,* the court held that a suit challenging pension contribution levels set by a county retirement board did not arise from protected conduct. The court rejected the board's argument that its decision arose from the deliberations and vote that led to its decision. The challenged act was the decision, not the deliberations and vote. "Acts of governance mandated by law, without more, are not exercises of free speech or petition." (*San Ramon, supra,* 125 Cal.App.4th at p. 354.)

Our Supreme Court discussed the decision in *San Ramon* with approval in *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1064 (*Park*). In *Park*, the court explained that "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity, or that was thereafter communicated by means of speech or petitioning activity. Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.) The court instructed that, to show that a claim arises from protected activity under section 425.16, subdivision (b)(1), the protected activity must "supply elements of the challenged claim." (*Park, supra,* 2 Cal.5th at p. 1064; see *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1318 [rent control board's lawsuit was based on the defendant's alleged illegal rental practices, not on

14

documents that the defendants filed with the board that simply triggered the lawsuit].)

In light of this case law, it is a close question whether Real Parties could reasonably believe that the Petition asserted a claim against them *arising* from their petitioning activity. Real Parties allegedly had an interest in the Development and engaged in petitioning activity concerning its approval. Thus, as discussed above, Real Parties could reasonably believe that the mandamus relief the Petition sought asserted a claim against them. But whether such a claim *arose* from protected conduct is another question.[5]

Real Parties' petitioning conduct was not an element of Petitioner's mandamus claim. A court issues a writ of mandate to compel compliance with the law by "any inferior tribunal, corporation, board, or person." (§ 1085, subd. (a).) While Real Parties' petitioning conduct allegedly contributed to the government decisions that Petitioners allege were unlawful, that

---

[5] Petitioners argue that no claim could have arisen from Real Parties' protected petitioning conduct because Real Parties admitted in their anti-SLAPP motion that they "have no operative permits on the property and they did not participate in the administrative hearings with respect to the challenged CDP." Petitioners are wrong. Real Parties were not disqualified from bringing an anti-SLAPP motion simply because allegations in the Petition concerning their petitioning conduct were untrue. If the Petition alleged a claim arising from protected conduct, Real Parties could rely on those allegations in bringing an anti-SLAPP motion, even if they also claimed that the claim was factually baseless. (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924.)

conduct was not a necessary part of Petitioners' claim that the governmental entities themselves acted unlawfully. Nor did Petitioners seek an order directly affecting Real Party's participation in the governmental *process* underlying the government entities' decisions (such as, for example, an order precluding Real Parties from submitting any further permits).[6] Thus, the trial court was on solid ground in concluding that the mandamus relief Petitioners sought against the Commission and the City did not arise from Real Parties' petitioning conduct.

Petitioners' request for attorney fees presents a different issue. As discussed above, the Petition sought attorney fees that could be directly assessed against Real Parties. And, unlike the orders that Petitioners sought against the Commission and the City, a claim for attorney fees against Real Parties would necessarily involve a direct challenge to Real Parties' petitioning conduct. As mentioned, attorney fee awards against real parties in interest are generally based on the real parties' participation in the litigation and on their furtherance of an interest that was "at least partly responsible for the policy or practice that gave rise to the litigation." (*Connerly, supra,* 37 Cal.4th at p. 1181.) Petitioners allege that Real Parties furthered such an interest through their petitioning activity, i.e., the "separate filing of permits for demolition and new construction."

---

[6] As our Supreme Court has noted, the decision in *San Ramon* correctly drew a "distinction, for anti-SLAPP purposes, between government decisions and the deliberations that lead to them." (*Park, supra,* 2 Cal.5th at p. 1064, citing *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 425–426.)

Thus, Real Parties could have reasonably concluded that the Petition asserted a claim against them arising from conduct protected under section 425.16, subdivision (e).  The trial court's decision to the contrary was an abuse of discretion.[7]

---

[7] Petitioners filed a request for judicial notice of various records that they argue provide context for why they named Real Parties in the Petition and show Real Parties' lack of participation in the permitting proceedings relating to the Development.  These factual materials were not before the trial court, and in any event are not relevant to the issues on appeal. We therefore deny the request.

## DISPOSITION

The trial court's order awarding attorney fees to Petitioners under Code of Civil Procedure section 425.16, subdivision (c) is reversed.  Real Parties in Interest are entitled to their costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.

18