Filed 1/13/23

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| BETSEY BRUBAKER, | B317694 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 17STFL05662) |
| v. | |
| ANDY STRUM, | |
| Defendant and Respondent; | |
| MARK KARNEY, | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael R. Powell, Judge. Reversed with directions.

Fernandez & Karney and Mark H. Karney for Plaintiff and Appellant.

Law Offices of Ben Gharagozli and Ben Gharagozli for Objector and Appellant.

Feinberg Mindel Brandt & Klein and Gregory A. Girvan for Defendant and Respondent.

_____

## INTRODUCTION

Sometimes a former spouse who owes child and spousal support (i.e., the obligor) to a former spouse (i.e., the obligee) doesn't pay what he or she owes, either because the obligor spouse has fallen behind in the payments or is not making support payments at all. To ensure the obligor's children and the obligee receive court-ordered support if that occurs, a family court order for child and spousal support must include an "earnings assignment order" that directs the obligor's employer to pay the obligee any portion of the obligor's earnings the obligor owes in child or spousal support.

The obligor's employer ignores an earnings assignment order at its peril. Family Code section 5241, subdivision (a),[1] provides that an employer who willfully fails to withhold and forward support pursuant to a valid earnings assignment order (called an "income withholding order" under federal law) must pay the obligee the amount of support that should have been withheld and sent to the obligee, plus interest. And if the employer complies with the assignment order, the obligor employee has some protection. Section 5241, subdivision (b),

_____

[1]     Undesignated statutory references are to the Family Code.

2

provides that, if the employer properly withholds support from the obligor's earnings, the obligor cannot be held in contempt or subject to criminal prosecution for nonpayment of the support, even if the obligee did not receive the support the obligor's employer withheld.

The issue in this appeal is whether section 5241 precludes the obligee from seeking a determination of arrearages allegedly owed by the obligor, where the obligor's employer is subject to a valid earnings assignment order. The family court ruled section 5241 precludes such a request, but reached that conclusion by answering a different question: whether section 5241 precludes an obligee from seeking to *enforce* arrearages against an obligor whose employer is subject to an earnings assignment order. The court concluded section 5241 precludes such a request, and then applied that reasoning to deny an obligee's request for an order to determine (as opposed to enforce) arrearages. As a result, the family court denied a request by Betsey Brubaker for an order to determine child and spousal support arrearages against her former husband, Andy Strum. The court also granted Strum's request for monetary sanctions under Code of Civil Procedure section 128.5 against Brubaker's attorney, Mark Karney, because the court found its interpretation of section 5241 "absolutely clear."

We agree with the family court that the language of section 5241 is clear, but not in the way the family court thought it was. Based on the language and legislative history of section 5241, we conclude that, where an employer is subject to an earnings assignment order, section 5241 protects obligors only from being held in contempt or subject to criminal prosecution for nonpayment of the support. Contrary to the family court's ruling,

3

the statute does not preclude an obligee like Brubaker from seeking arrearages or a determination of arrearages from an obligor like Strum. Which in turn means Brubaker's request for an order determining arrearages was not frivolous for the reasons stated by the family court and did not support an award of sanctions against Karney. Therefore, we reverse the family court's order and direct the court to determine the amount of arrearages, if any, Strum owes Brubaker.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Strum Owes Brubaker Monthly Child and Spousal Support, Plus a Percentage of His Bonuses and Commissions*

On July 23, 2019 the family court entered a final statement of decision dissolving Brubaker and Strum's marriage and awarding Brubaker $2,071 in monthly child support and $1,950 in monthly spousal support, plus 13.5 percent of any bonuses or commissions Strum received in excess of his base monthly salary (known as *Ostler-Smith* payments).[2] At that time, Strum worked for Comcast Cable Communications, and an income withholding order[3] directed Comcast to withhold the total amount of support

---

[2]    An *Ostler-Smith* payment is an additional support award calculated as a percentage of discretionary bonus income actually received. (See *In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949; *Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 54.)

[3]    An income withholding order is a federally mandated form for any action in which a court orders child or spousal support. It is submitted to and signed by the family court. (See 42 U.S.C.

4

payments from Strum's paychecks and forward that amount to the California Child Support Services Department on behalf of Brubaker.

On August 31, 2020, after Strum apparently left Comcast, the family court issued a new income withholding order to Strum's next employer, Synamedia Americas, LLC.  Strum lost his job at Synamedia on February 12, 2021, but he received severance payments through March 31, 2021.  On April 1, 2021 Strum sent Brubaker two personal checks, one for $1,035 toward his child support obligation of $2,071 and one for $141.02 toward his spousal support obligation of $1,950.  According to Strum, he paid a medical premium on Brubaker's behalf and reduced the spousal support payment by that amount.

On April 12, 2021 Strum began working for Kinetiq/IQ Media, and on April 21, 2021 the family court issued an income withholding order to Kinetiq.  Kinetiq began withholding child and spousal support payments from Strum's paychecks starting with the pay period that began on April 24, 2021.

On April 27, 2021 Brubaker obtained a writ of execution for Strum's underpayments of child and spousal support for April 2021.  On May 21, 2021 Brubaker received support payments withheld from Strum's paycheck for the last week of April 2021, and on June 2, 2021 the Los Angeles County Sheriff levied on Strum's bank account for the amount Strum underpaid in April 2021, including the amount for the last week of April.

---

§ 666; Fam. Code, § 5208, subd. (b).)  The form is available from the Administration for Children and Families, a division of the United States Department of Health and Human Services, at https://www.acf.hhs.gov.

B.   *Brubaker Files a Request for an Order To Determine Child and Spousal Support Arrearages*

On June 10, 2021 Brubaker filed a request for an order to "set child support arrears" including a determination of unpaid *Ostler-Smith* payments. Brubaker alleged Strum owed her $6,974.89 in child and spousal support for the period April 1, 2021 to May 24, 2021 (including the amount obtained from the levy on Strum's bank account, which Brubaker had not yet received). Brubaker also asked the court to determine the amount of *Ostler-Smith* payments Strum owed since March 2021. Brubaker stated that she subpoenaed Kinetiq to ascertain whether Strum had received any signing bonus or commissions Strum had not disclosed to Brubaker and that Strum had "not been forthcoming" about bonus income and commissions in the past. In later declarations supporting the request for an order to determine arrearages, Brubaker claimed arrearages as far back as August 2020.

On July 6, 2021 counsel for Strum sent Karney a letter concerning Brubaker's request for an order determining arrearages. Counsel for Strum stated Strum did not owe Brubaker any unpaid child or spousal support for April or May 2021, and he attached copies of Strum's paystubs showing support payments Kinetiq had withheld in May and June 2021. Counsel for Strum also stated that, because Kinetiq was subject to an income withholding order, Brubaker had to seek any unpaid amounts accrued during Strum's employment there from Kinetiq. Finally, counsel for Strum advised Karney that, if Brubaker did not withdraw her request, Strum would seek attorneys' fees from Brubaker under section 271 and from Karney under Code of Civil Procedure section 128.5.

6

Brubaker did not withdraw her request for order to determine arrearages. On July 8, 2021 Strum filed a response to the request and argued Brubaker's request was frivolous because Strum did not owe Brubaker any unpaid child or spousal support for the period April 1, 2021 to May 24, 2021 and Kinetiq was subject to an income withholding order. Thus, Strum argued, to the extent Brubaker believed Kinetiq had not withheld all support payments from Strum's paychecks, Brubaker had to "seek relief" from Kinetiq. Strum asked the court to impose monetary sanctions against Karney under Code of Civil Procedure section 128.5 because Brubaker's request for order was "'completely without merit,'" Karney filed the request knowing Brubaker had obtained a writ of execution and would receive the proceeds from the levy on Strum's bank account for the amount Strum withheld from his April 2021 support payments, and the combination of the funds that Brubaker would receive from the levy and that Kinetiq had withheld resulted in an overpayment to Brubaker. In the alternative, Strum sought sanctions against Brubaker under section 271.

Brubaker submitted several declarations of payment history in support of her request for an order determining arrearages. In the latest declaration, Brubaker claimed Strum owed $122.12 in child support, $6,750.82 in spousal support, and $2,829.98 in *Ostler-Smith* payments. The payment history for child support showed Strum underpaid Brubaker in August 2020 and May 2021, and the payment history for spousal support showed Strum underpaid Brubaker in late 2020 and January through May 2021. The payment history for *Ostler-Smith* payments showed underpayments in December 2020 and June

7

2021.  Brubaker acknowledged receipt of funds from the Sheriff's levy.

Brubaker attached to her declaration a March 22, 2021 letter from Kinetiq to Strum stating that Strum was eligible to receive a "ramp-up bonus" of $18,750 in the second quarter of 2021, paid over three months, and that Strum would receive three advances on commissions totaling $18,750, also paid over three months.  Brubaker attached copies of Strum's paystubs from Kinetiq for salary, bonus, and commissions paid for the pay periods from April 9 to May 24, 2021, several of which did not show any deductions for support payments.  Finally, Brubaker attached a letter from Strum's prior employer Synamedia stating that Synamedia withheld only 12.8 percent (instead of 13.5 percent) of a commission paid to Strum on December 11, 2020.

C.      *The Family Court Denies Brubaker's Request for Order To Determine Arrearages and Imposes Monetary Sanctions*

The family court began the hearing on Brubaker's request by stating that issues arising from underpayments from employers that are subject to an income withholding order should be "handled" through employers "because they're the ones who are responsible."  Karney argued there were gaps in payments between the time the income withholding order was submitted to Kinetiq[4] and the time Brubaker began receiving support

---

4      Section 5232 provides:  "Service on an employer of an assignment order may be made by first-class mail in the manner described in section 1013 of the Code of Civil Procedure."  The employer must commence withholding pursuant to the assignment order within 10 days of service.  (§ 5233.)  There is no

payments from Kinetiq.  Karney also identified underpayments in support and *Ostler-Smith* payments in 2020 and 2021.

Counsel for Strum argued that, once Strum's employer became subject to an income withholding order, support payments were the employer's responsibility, and Brubaker had to "go after the employer" or the Los Angeles County Child Support Services Department.  Counsel for Strum said that, because Synamedia was under an income withholding order from August 2020 to March 2021, Brubaker had to direct any claims for deficiencies during that time to Synamedia.  Similarly, counsel for Strum argued that, because Kinetiq began withholding payments from Strum's paychecks for the pay period beginning in late April, the only time period not covered by an income withholding order was the first three weeks in April.  Counsel for Strum argued Brubaker received payments for those three weeks from the levy on Strum's bank account.

The court stated:  "If there's an income withholding order and there's a request for order for arrearages, that arrearage needs to go to the employer, not [Strum]. . . .  Assessing arrearages, finding out who's responsible, et cetera, that becomes an issue between [Brubaker] and the employer, not [Brubaker] and [Strum]. . . .  The only time that Mr. Strum would be on the hook for anything potentially would be the April date.  And so that's the only thing that I would need to address as to arrearages as to him. . . .  The [Family] Code is very specific.  The employer is the one who has to withdraw.  And if they didn't withdraw, it doesn't matter.  They're still on the hook."

---

evidence in the record of how any of the income withholding orders were served on Strum's employers.

Regarding the request for sanctions, counsel for Strum argued that his July 6, 2021 letter made clear the only month in dispute was April 2021 and that Brubaker knew she would receive the funds from the bank levy by the end of July, yet she still refused to withdraw the request for order. Karney argued Strum did not provide the new income withholding order to Kinetiq until the first week of May and had not been "up front" about his bonuses. Karney said that the request for order was "not done in bad faith at all" and that he "made every effort to try to resolve this."

Following a recess the court said it would not "rule on whether [Strum's] past or current employers have satisfied their obligations." Citing section 5241, the court stated: "If there's an income withholding [order in place] and there are arrearages that have not been paid, . . . that action lies with the employer, not with [Strum]. In this particular case, [Brubaker] filed the action against [Strum] seeking arrearages in which I believe the statute is absolutely clear about, which is the remedy lies with the employer." The court also said it would grant Strum's request for sanctions under Code of Civil Procedure section 128.5 because "it's absolutely clear . . . that the remedy for this is the employer, not [Strum]. And what has happened here is we had a request for order that never should have been filed at all. I think that the law is unequivocal about it."

On October 22, 2021 the family court issued a written order denying Brubaker's request for an order "to determine child and spousal support arrearages." The order stated: "The Court finds that a valid Income Withholding Order existed prior to March 30, 2021 and after May 1, 2021. [Brubaker] must seek relief from [Strum's] employer directly for all periods there is a valid Income

10

Withholding Order. The Court finds that [Strum's] personal payments and the bank levy on [Strum's] bank account satisfied his support obligations for April 2021." The order also awarded Strum $938.50 to reimburse him for an overpayment resulting from the transfer of funds to Brubaker from the bank account she levied on and $9,329.50 in sanctions against Karney under Code of Civil Procedure section 128.5. Brubaker and Karney timely appealed.

## DISCUSSION

Brubaker does not challenge the family court's order finding Strum satisfied his support obligations for April 2021 or for the reimbursement of funds to Strum. But she argues the family court erred in ruling that section 5241 prevents her from seeking arrearages from Strum, including a determination of arrearages, for time periods in which Strum's employers were subject to an income withholding order. For the same reason, Karney argues the family court erred in granting Strum's request for sanctions.

> A. *The Family Code Does Not Prevent Brubaker from Seeking an Order To Determine Arrearages from Strum*

> 1. *Applicable Law and Standard of Review*

To effect a family court order to pay child or spousal support, the court issues an earnings assignment order to the employer of the obligor "to pay to the obligee that portion of the obligor's earnings due or to become due in the future as will be

11

sufficient to pay" the amount ordered by the court for support and any arrearage.  (§ 5230.)  An assignment order is functionally equivalent to an income withholding order, the term federal law uses for notices to employers to withhold income for child support.  (See § 5246, subd. (c).)  In general, a parent may enforce an obligation of the other parent to make support payments "by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary."  (§ 290; see § 7641, subd. (c) [parent may enforce the other parent's obligation to pay child support by all remedies available for the enforcement of judgments].)

Section 5241 addresses an employer's liability for failing to comply with an earnings assignment order.  Section 5241, subdivision (a), provides:  "An employer who willfully fails to withhold and forward support pursuant to a currently valid assignment order entered and served upon the employer pursuant to this chapter is liable to the obligee for the amount of support not withheld, forwarded, or otherwise paid to the obligee, including any interest thereon."  Section 5241, subdivision (b), provides, in relevant part:  "If an employer withholds support as required by the assignment order, the obligor shall not be held in contempt or subject to criminal prosecution for nonpayment of the support that was withheld by the employer but not received by the obligee."[5]  The question in this appeal is whether these

_____

[5]  Section 5235, subdivision (a), similarly provides in relevant part:  "If an employer withholds support as required by the assignment order, the obligor shall not be held in contempt or subject to criminal prosecution for nonpayment of the support that was withheld by the employer but not received by the obligee.  If the employer withheld the support but failed to

12

provisions prevent an obligee like Brubaker from seeking a request for an order determining arrearages from an obligor like Strum whose employer was subject to a valid income withholding order at the time of the alleged underpayments.

"Issues of statutory interpretation are questions of law subject to de novo review on appeal." (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 25; see *In re Marriage of Davis* (2015) 61 Cal.4th 846, 851; *Welch v. Welch* (2022) 79 Cal.App.5th 283, 296.) The general principles governing the interpretation of a statute are well settled. "'''Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.] When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. [Citation.] The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment.'''" (*Welch*, at p. 296; see *Davis*, at pp. 851-852.)

---

forward the payments to the obligee, the employer shall be liable for the payments, including interest, as provided in Section 5241."

2. *Neither the Plain Language nor the Purpose of Section 5241 Restricts an Obligee from Seeking an Order Determining Arrearages from an Obligor*

A motion for the determination of arrearages is a "species of declaratory judgment or accounting unconnected with any specific enforcement of the support obligation." (*County of Shasta v. Smith* (1995) 38 Cal.App.4th 329, 334 (*County of Shasta*); see *In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1214 [a family court has the authority "to determine whether any arrearages exist and, if so, the amount due"]; *In re Marriage of Robinson* (1998) 65 Cal.App.4th 93, 98 [a determination of arrearages "'rests upon an existing order rendered in a family law action'"].) The determination of arrearages is "treated as a money judgment" enforceable under section 290. (*County of Shasta*, at p. 334; see *In re Marriage of Lackey* (1983) 143 Cal.App.3d 698, 702-703 [custodial parent may file a motion in superior court asking the court to determine the amount of arrearages under an existing judgment and for liquidation of the arrearages, and the resulting judgment may then be enforced as specified under (the predecessor to) section 290].)[6]

Section 5241 does not address requests for, or orders determining, arrearages. The statute merely protects an obligor from attempts to hold the obligor in contempt or to prosecute the obligor criminally for nonpayment of support in certain

---

[6] At the time the court decided *In re Marriage of Lackey*, *supra*, 143 Cal.App.3d 698, section 290 was codified at Civil Code former section 4380.

14

circumstances.  Brubaker is not seeking to do either of those things.  Thus, section 5241 does not limit Brubaker in seeking a request for order determining arrearages from Strum.

This result is supported by the legislative history of Assembly Bill No. 960, which added the relevant language to section 5241.  (See Assem. Bill No. 960 (1997-1998 Reg. Sess.) §§ 4-5; see also *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1335 [although the meaning of language in a statute "is plain, it is helpful to look at [the statute's] legislative history"]; *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1046 ["we [may] look to legislative history to confirm our plain-meaning construction of statutory language"]; *United Health Centers of San Joaquin Valley, Inc. v. Superior Court* (2014) 229 Cal.App.4th 63, 79 ["'[r]eviewing courts may turn to the legislative history behind even unambiguous statutes when it confirms or bolsters their interpretation'"].)  The court's decision in *County of Shasta*, *supra*, 38 Cal.App.4th 329 motivated the Legislature to enact the amendments to section 5241.  The court in *County of Shasta* held an obligor was liable for support payments withheld by his employer but never sent to the obligee, in that case before the employer declared bankruptcy.  (*Id.* at p. 336.)  An early analysis of Assembly Bill No. 960 cited *County of Shasta* and said the decision unfairly held obligors responsible for support twice, "first when it comes out of his or her wages, and second when the obligee or the [district attorney] engages in other enforcement mechanisms to collect the support which never reached the obligee."  (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 960 (1997-1998 Reg. Sess.) as amended Jan. 12, 1998.)  At that time, the bill would have prevented an obligor "from being liable for support payments withheld from the obligor's earnings

pursuant to an earnings assignment order but not received by the obligee." (*Ibid*.)

The Legislature, however, amended the bill to limit the scope of protection available to an obligor whose employer withheld but did not pay support obligations to the obligee. Rather than providing that an obligor "shall not be held liable for, and shall not owe, the support that was withheld by the employer but not received by the obligee," the bill proposed to amend section 5241 to state "the obligor shall not be held in contempt or subject to criminal prosecution for nonpayment of the support that was withheld by the employer but not received by the obligee." (Assem. Bill No. 960 (1997-1998 Reg. Sess.) as amended Jan. 16, 1998.) This limitation on protection for obligors tracks legislative concerns that obligors were suffering "various consequences for nonpayment of support, even though the obligor believe[d] the support to have been paid." (Assem. Com. on Judiciary & Com. on Appropriations, 3d reading analysis of Assem. Bill No. 960 (1997-1998 Reg. Sess.) as amended Jan. 16, 1998.) For example, the bill's author reported it was "not an uncommon scenario that the [district attorney], upon receiving the support from the obligor's employer, fails to properly credit the payment to the obligor's account and unfairly and incorrectly continues to show that the obligor owes support. At such time . . ., the [district attorney] engages in various enforcement activities to collect the supposed arrearage." (*Ibid*.) Such enforcement actions included holding the obligor in contempt or criminally prosecuting the obligor "when an employer who has withheld the support for the obligor's earnings has failed to forward the support to the obligee." (*Ibid*.) Thus, the bill sought "to protect obligors from being held in contempt or subject to

16

criminal prosecution for nonpayment of support when the support has in fact been withheld from their wages, but through no fault of their own, fails to reach the obligee." (*Ibid.*; see *In re J.W.* (2002) 29 Cal.4th 200, 211 ["[t]o determine the purpose of legislation, a court may consult contemporary legislative committee analyses of that legislation"].) The Legislature did not intend to limit an obligee's right to seek a determination of arrearages from an obligor whose employer was subject to an earnings assignment order, even if the employer had withheld funds for support payments.

The family court made two errors in interpreting and applying section 5241 to Brubaker's request for an order to determine arrearages. First, the court conflated Brubaker's request for an order to determine arrearages with an enforcement action to recover arrearages. (At times, the parties did as well.) The court reasoned that, because section 5241 made Strum's employers liable for any arrearages that accrued while Strum was employed, Brubaker could not "seek[ ] arrearages" from Strum. But Brubaker's request did not seek arrearages from Strum, at least not yet. It only asked the family court to "set child support arrears including [a] determination of unpaid *Ostler/Smith* payments." Thus, the family court's reasoning that section 5241 does not permit Brubaker to seek arrearages from Strum did not apply to Brubaker's more limited request for an order determining arrearages.

Second, the family court's reason for denying Brubaker's request for an order determining arrearages was based on an erroneous interpretation of section 5241. Contrary to the family court's interpretation, section 5241 does not insulate Strum from an action to enforce the payment of arrearages. Section 5241,

17

subdivision (a), makes employers liable for arrearages they willfully fail to withhold and pay under an applicable earnings assignment order, but that provision does not address an obligor's liability for such payments. Indeed, the legislative history shows the Legislature was very much aware of the court's holding in *County of Shasta* and specifically decided against relieving obligors of liability for arrearages, even where an employer withheld support payments but failed to forward the payments to the obligee.[7]

Strum argues this interpretation of section 5241 would allow an obligee to collect arrearages from the obligor and then "get double recovery" against the employer. Strum cites section 5241, subdivision (a), which, as stated, provides that an employer who willfully fails to withhold and send to the obligee support pursuant to a valid assignment order is liable for the support the employer failed to withhold and pay to the obligee, plus interest. That liability, however, is a penalty for the *willful* failure to comply with an assignment order, which may also subject the employer to contempt. (§ 5241, subd. (c); see Code Civ. Proc., § 1218.) And section 5241 provides that any penalty for failing to comply with an assignment order "shall be payable directly to the obligee." (§ 5241, subd. (d).) Where an employer does not

---

[7] In those circumstances, section 5241, subdivision (d), provides that "the local child support agency shall take appropriate action to collect the withheld sums from the employer." To the extent both a local child support agency and an obligee seek to enforce an earnings assignment order, the Family Code provides that, in the event of conflicting orders, "the court order last issued shall supersede all other orders and be binding upon all parties . . . ." (§ 17404, subd. (d).)

18

willfully fail to withhold payments, nothing in the Family Code suggests the obligee can recover the arrearages owed from both the employer and the obligor.[8]

B.     *Brubaker's Request for an Order Determining Arrearages Was Not Sanctionable*

Code of Civil Procedure section 128.5 "gives the trial court discretion to award 'reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay.' [Citation.] '"Frivolous" means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party.'" (*Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 893; accord, *Rudisill v. California Coastal Com.* (2019) 35 Cal.App.5th 1062, 1070; see Code Civ. Proc., § 128.5, subds. (a) & (b).) "To meet this standard, a party requesting the award must show that 'any reasonable attorney would agree the motion was totally devoid of merit.'" (*Rudisill*, at p. 1070.)

The family court granted Strum's request for sanctions against Karney under Code of Civil Procedure section 128.5 because the court believed section 4251 required Brubaker to seek a determination of arrearages (and the actual arrearages) from Strum's employers. Because the family court misinterpreted section 4251, it had no basis for finding

---

8     Strum also cites section 5235, subdivision (a), for the proposition that Strum's employer "is liable for arrears, if any exists." But section 5235, subdivision (a), like section 5241, does not address an obligor's liability for arrearages. Section 5235, subdivision (a), refers only to an employer's liability "as provided in Section 5241."

19

Brubaker's request totally devoid of merit.  Therefore, the court erred in awarding Strum sanctions against Karney.

## DISPOSITION

The family court's order denying Brubaker's request for an order determining arrearages and granting sanctions against Karney is reversed.  The family court is directed to determine the amount of arrearages, if any, prior to March 30, 2021 and after May 1, 2021.  Brubaker is to recover her costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.