Filed 6/5/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HASTINGS COLLEGE CONSERVATION COMMITTEE et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> DAVID FAIGMAN et al., <br><br> Defendants and Appellants. | A166898 <br><br><br> (City & County of San Francisco Super. Ct. No. CGC-22-602149) |

On January 1, 2023, Assembly Bill No. 1936 (2021–2022 Reg. Sess.) (AB 1936) changed the name of what was formerly known as "Hastings College of the Law" to "College of the Law, San Francisco" (College). Plaintiffs and respondents Hastings College Conservation Committee, Stephen Hastings Breeze, Stephanie Azalea Brackel, Catherine Tortenson, Scott Hastings Breeze, Collette Breeze Meyers, and Colin Hastings Breeze (collectively plaintiffs) have filed a lawsuit against the State of California challenging the constitutionality of AB 1936. As relevant here, the lawsuit also names as defendants the College's Dean and Directors in their official capacities (collectively the College Defendants[1]), seeking both declaratory

---

[1] The College Defendants are David Faigman, Simona Agnolucci, Carl Robertson, Shashikala Deb, Michael Ehrlich, Andrew Giacomino, Andrew

relief and an injunction to prevent them from implementing the "unconstitutional aims" of the law.

The College Defendants filed a special motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16[2]), arguing that the complaint was replete with references to their public statements and resolutions regarding a new name for the College and calling upon the Legislature to pass legislation adopting it. The trial court denied the motion, concluding that plaintiffs' causes of action were based on the Legislature's enactment of AB 1936, not on the College Defendants' speech or petitioning activity that preceded it. On appeal, the College Defendants no longer try to justify their motion by pointing to their activities prior to the statute's enactment. Instead, they argue that the anti-SLAPP statute applies because AB 1936 "authorizes and requires" them to engage in particular speech—the new name by which they "represent the College's identity and values to the public"—and because plaintiffs' claims, if successful, would prevent or interfere with that speech.

We can agree that the success of plaintiffs' claims would, at a minimum, prevent the College Defendants from expressing a new official designation for the College, but even assuming that future speech in which the College Defendants use the new name is protected activity within the meaning of the anti-SLAPP statute, it is not the reason plaintiffs have sued them. Because plaintiffs' claims are not *based on* the College Defendants' speech, we conclude that the trial court properly denied the motion.

---

Houston, Claes Lewenhaupt, Mary Noel Pepys, Courtney Power, and Albert Zecher. The State is not a party to this appeal.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise specified. SLAPP stands for " 'strategic litigation against public participation.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 & fn. 1 (*Navellier*).)

2

### 1. Facts[3]

Born in 1814, Serranus Clinton Hastings (S.C. Hastings) was the first Chief Justice of California and the State's third Attorney General. In addition to holding these public roles, he amassed significant wealth from various real estate ventures and by 1870, became one of the largest landowners in California. In 1878, S.C. Hastings sought to establish the first law school on the West Coast of the United States and proposed the same to the California Legislature. In response, the Legislature enacted a statute that same year titled "An Act to create Hastings' College of the Law, in the University of the State of California" (the Act). (Stats. 1878, ch. 351.)

The Act provided "[t]hat S.C. Hastings be authorized to found and establish a Law College, to be forever known and designated as 'Hastings' College of the Law.' " (Stats. 1878, ch. 351, § 1.) The Act further provided that the College would be governed by a Board of Directors (Board), independent of the Regents of California, and that the directors "shall always provide for filling a vacancy with some heir or some representative of [] S.C. Hastings." (*Id.*)

The Act's passage was expressly conditioned upon S.C. Hastings's payment of $100,000 into the State Treasury. (Stats. 1878, ch. 351, § 7.) The Act required the State to appropriate seven percent per year of this sum and pay it "in two semi-annual payments to the Directors of the College." (*Id.* at § 8.) The Act further stated that "should the State . . . fail to pay to the Directors of said College the sum of seven per cent per annum . . . or should the College cease to exist, then the State . . . shall pay to the said

---

[3] Our recitation is based on the pleadings and on the papers submitted in the trial court in connection with the anti-SLAPP motion.

S.C. Hastings, his heirs or legal representatives, the said sum of one hundred ($100,000) thousand dollars and all unexpended accumulated interest." (*Id.* at § 13.) S.C. Hastings accepted these terms and paid $100,000 to the State Treasury, and the College was established. The Legislature subsequently codified the Act's terms in the Education Code. (See former Ed. Code, § 92200 et seq.)

In 2017, The San Francisco Chronicle published an article titled "The Moral Case for Renaming Hastings College of the Law," which included allegations that S.C. Hastings was involved in fomenting violence and atrocities against Native Americans living in what is present-day Mendocino County. In response, the College formed the Hastings Legacy Review Committee (HLRC) to consider and make appropriate recommendations to address S.C. Hastings's legacy. It also commissioned a history professor to research and draft a report regarding S.C. Hastings's role in the killing of indigenous people in Northern California in the mid-nineteenth century. In September 2020, Dean Faigman submitted a report to the Board that discussed HLRC's conclusions and recommended that the College retain its name but pursue other restorative justice initiatives. In recommending that the College keep its name, Dean Faigman reasoned that "most of the legal profession has no idea who Serranus Hastings was or that UC Hastings was named after him."

On October 28, 2021, the New York Times published an article questioning the College's name with a headline that S.C. Hastings "masterminded the killings of hundreds of Native Americans." On November 2, 2021, the Board held a special meeting and passed a resolution directing Dean Faigman to "work with the California Legislature, the Governor's Office, and other offices to enact legislation changing the name of

4

the school."  A number of other meetings followed, and the Board ultimately passed a resolution to recommend the name "College of the Law, San Francisco" to the Legislature.

AB 1936 was passed by the Legislature in August 2022 and signed by the Governor in September 2022.  (Stats. 2022, ch. 478.)  AB 1936 designated the school's name as "College of the Law, San Francisco" and amended various statutes, including sections of the Education Code, to conform to the new name.  It also eliminated S.C. Hastings's hereditary seat on the Board. AB 1936 became effective on January 1, 2023.

### 2. *Lawsuit and Anti-SLAPP Motion*

Plaintiffs—a College alumni association and various descendants of S.C. Hastings—filed a complaint against the State and the College Defendants.  The complaint included causes of action for declaratory relief against all defendants on the grounds that AB 1936 violated the contract clauses of the California and United States Constitutions, constituted an impermissible bill of attainder and ex post facto law, and violated the California Constitution's provision regarding collegiate freedom.  (Cal. Const., art. IX, § 9.)  The complaint requested a declaration that the College's name remains "Hastings College of the Law" and that S.C. Hastings's heirs or representatives are still entitled to a seat on the Board.  As against the State only, the complaint alleged causes of action for breach of contract (specific performance and damages) on the grounds that the Act constituted a "binding written agreement between the State of California and S.C. Hastings and his descendants" and that the State breached this agreement by enacting AB 1936.  As against the College Defendants only, the complaint sought injunctive relief to enjoin them from implementing the unconstitutional provisions of AB 1936, including the further expenditure of

5

taxpayer funds to change the College's name or to eliminate the hereditary Board seat.

The College Defendants filed a special motion to strike the complaint under the anti-SLAPP statute. They argued that plaintiffs' claims arose from the following protected activity: (1) statements made by the College Defendants at Board meetings with respect to the College's name; (2) the College Defendants' public expressions regarding the College's name and request to the Legislature for a name change; and (3) the College Defendants' future conduct that the injunctive and declaratory relief would prevent, such as lobbying for additional funding to implement the name change, pursuing any other change to the College's original statutory framework, or "even . . . referring to the College by the name they selected." They also argued that plaintiffs could not establish a probability of prevailing on the merits of their claims under the second prong of the anti-SLAPP statute.

The trial court denied the motion under the first prong and did not reach the second. It held that "none of plaintiffs' claims are predicated on defendants' protected activity" because plaintiffs are "challenging the enactment of AB 1936 and the consequences that flow from that statute, i.e., the replacement of the Hastings College of the Law name and the removal of the hereditary seat on the college's board of directors." The College Defendants timely appealed.

## DISCUSSION

### 1. *Anti-SLAPP Law and Standard of Review*

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike,

6

unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

"The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) "Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' " (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier*, *supra,* 29 Cal.4th at p. 89.) We review de novo a trial court's ruling denying an anti-SLAPP motion. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

### 2. We Find No Forfeiture

In general, a reviewing court will not consider for the first time on appeal arguments that could have been, but were not, presented to the trial court. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591.) Because the College Defendants' argument on appeal is not based, as it was in the trial court, on the speech and petitioning activity by which they sought AB 1936's enactment, and instead rests on the future speech that they claim AB 1936

7

"authorizes and requires" of them, plaintiffs contend that the argument is forfeited.[4]

Any appearance the College Defendants' current argument made in the trial court was fleeting at best, and by no means can we fault the trial court for not addressing it. However, their motion and opening memorandum did note that plaintiffs sought to prevent them from referring to the College by its new name, and their reply memorandum maintained that their implementation of AB 1938 was "inseparable from protected activities" because the College "wants to use 'UC College of the Law, San Francisco' to describe itself to the world." Moreover, at the hearing on the motion, the College Defendants' counsel argued that "the statute itself . . . is authorizing and supporting speech activity." In light of these statements, we will not deem the argument forfeited.

### 3. *Whether Plaintiffs' Claims Arise From Protected Activity*

#### a. *"Arising From" Under the First Prong*

Under the first prong of the anti-SLAPP statute, we must determine whether the College Defendants have made a threshold showing that the challenged causes of action arise from their protected activity. (*Bonni, supra,* 11 Cal.5th at p. 1009.) If such a showing has been made, we then move to the second prong to determine whether plaintiffs have shown that their claims have at least minimal merit. (*Ibid.*)

The anti-SLAPP statute identifies four categories of protected activity. (§ 425.16, subd. (e)(1)–(4).) While the College Defendants argue that the

---

[4] We think the trial court was correct to reject the argument the College Defendants made there. (See, e.g., *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 ["That a cause of action arguably may have been triggered by protected activity does not entail that it is one arising from such"]; *Durkin v. City and County of San Francisco* (2023) 90 Cal.App.5th 643, 652–654.)

name used to describe the College falls within the range of speech entitled to First Amendment protection, "courts determining whether conduct is protected under the anti-SLAPP statute look not to First Amendment law, but to the statutory definitions in section 425.16, subdivision (e)." (*City of Montebello v. Vasquez* (2016) 1 Cal 5th 409, 422.) The College Defendants do not expressly invoke any of the statutory definitions, but plaintiffs, for their part, do not argue that no definition applies. To avoid dwelling on an issue the parties have not raised, we will therefore assume, without deciding, that the College Defendants' use of the new name could qualify for protection under subdivision (e)(3), which covers "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," or under subdivision (e)(4), which covers "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063 (*Park*).) In other words, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability . . . ." (*Id.* at p. 1060.)

In *Park*, for example, the Supreme Court held that a discrimination claim brought by a university professor who was denied tenure did not arise from any protected statements or communications made by the university during the tenure process. Rather, the claim was based on "the denial of

9

tenure itself and whether the motive for that action was impermissible." (*Park, supra,* 2 Cal.App.5th at p. 1068.) The court reasoned that "[t]he tenure decision may have been communicated orally or in writing, but that communication does not convert Park's suit to one arising from such speech." (*Ibid*.)

### b. *The Conduct Underlying Plaintiffs' Causes of Action Was the Enactment of AB 1936, Not the College Defendants' Speech*

The five causes of action asserted against the College Defendants (alone or alongside the State) challenge the same two things: the change to the College's name, and the removal of the hereditary seat on the College's Board. For the purposes of our discussion, we can disregard the dispute over the Board seat because the College Defendants do not argue that it is based on protected activity.[5] As for the name, the complaint alleges that it was initially "enshrined by State law" in 1878, and that AB 1936—another state law—has changed it. It is the Legislature's enactment of AB 1936 that, according to the complaint, gives rise to liability and therefore, in our view, provides the basis for plaintiffs' claims.

It is well established that anti-SLAPP protection "extends to statements and writings of governmental entities and public officials on matters of public interest and concern that would fall within the scope of the statute if such statements were made by a private individual or entity." (*Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 17.) It appears to be an open

---

[5] Thus, as the College Defendants acknowledge, plaintiffs have pled what are at most "mixed" causes of action, meaning they arise only in part from protected activity. (See *Baral, supra,*1 Cal.5th at p. 382.) While the College Defendants' motion sought to strike each cause of action in its entirety, on appeal they argue that "at a minimum," each of plaintiffs' causes of action "should be stricken to the extent they arise from and seek to interfere with" the College Defendants' speech.

question whether a challenge based on a speech-related *enactment*, rather than on other activities undertaken by public entities or officials in furtherance of their rights to free speech or to petition, may give rise to an anti-SLAPP motion. (See *San Ramon Valley Fire Protection Dist. v. Contra Costa County Employees' Retirement Assn.* (2004) 125 Cal.App.4th 343, 357 [suggesting that a public entity's speech-related enactment may implicate its exercise of free speech for anti-SLAPP purposes]; *City of Montebello v. Vasquez, supra,*1 Cal.5th at pp. 425–427 [discussing *San Ramon* and noting concern that applying section 425.16 to a public entity's enactment may chill citizens' exercise of their right to challenge government action].) But we need not decide that question here. Even assuming that AB 1936 is a "speech-related" measure and that plaintiffs' challenge to its enactment may be subject to an anti-SLAPP motion, such a motion would properly be brought by the public entity that enacted it: the State, not the College Defendants. As the plain language of the anti-SLAPP statute provides, "[a] cause of action against a person arising from any act of *that person* in furtherance of the person's right of petition or free speech . . . shall be subject to a special motion to strike." (§ 425.16, subd. (b)(1), italics added.)

To avoid this problem, the College Defendants explain that their anti-SLAPP motion is not based on the fact that AB 1936 *itself* can be characterized as a speech-related measure insofar as it establishes a new name for the College. Rather, they argue that AB 1936 "authorizes and requires specific speech" by the College Defendants—i.e., referring to the College by its new name—and that the success of plaintiffs' claims would prevent them from engaging in that speech. Or as they write in their reply, "[t]he point is that AB 1936 authorizes speech, and that plaintiffs' claims arise directly from (and seek to silence) the speech that the statute governs."

11

Nothing in the language of section 425.16 or the case law construing it authorizes an anti-SLAPP motion simply because a claim would have an adverse effect on protected activity. Presumably that is why the College Defendants also assert that plaintiffs' claims "arise directly from" their future speech referring to the College by its new name, but we are not persuaded. "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier, supra*, 29 Cal.4th at p. 89.) While the complaint alleges that the College Defendants "cannot lawfully remove 'Hastings' from the College's name," and seeks to prevent them from doing so, the reasons plaintiffs contend the name's removal would be unlawful are the same reasons they contend AB 1936 itself is unlawful—for example, that it would violate the contract clauses of the federal and state constitutions or would constitute an impermissible bill of attainder. The wrongfulness of any acts by the College Defendants depends on and derives from the wrongfulness of AB 1936 itself. In these circumstances, "the wrong complained of" (*Park, supra*, 2 Cal.5th at p. 1060) is the law's enactment, not what the College Defendants do or say in conformity with it. That is true even if we accept that, under *Vargas*, the College Defendants' use of the new name is protected activity within the meaning of section 425.16, subdivision (e), and that plaintiffs' claims would interfere with or prevent that speech. The College Defendants' future speech is at most a *consequence* of the State's enactment of AB 1936; it is the enactment itself that gives rise to plaintiffs' claims.[6]

_____

[6] Plaintiffs observe that, while the name established by AB 1936 is the one that the College Defendants prefer to use, it is not their preference that is determinative; if the College Defendants were to "vote tomorrow to revert to using the College's former name," the College's official designation would

We are aware that in *Bonni*, the Supreme Court rejected the plaintiff doctor's argument that legally mandated reports the defendant hospital made to the Medical Board of California and National Practitioner Data Bank regarding his suspension did not give rise to his claims because they were simply the "natural consequence" of the acts that actually harmed him. (*Bonni, supra*, 11 Cal.5th at p. 1018.) However, the court rejected the doctor's argument because his complaint alleged the reports "as separate acts of retaliation," and his declaration in opposition to the anti-SLAPP motion "separately describe[d] the harm he suffered as a result of the allegedly retaliatory reports." (*Ibid.*) Here, by contrast, plaintiffs do not allege the College Defendants' future speech as an independent basis for liability or as imposing distinct harms.

Plaintiffs contend that the reason they have sued the College Defendants is that they "merely occupy official positions on the College's Board for which injunctive relief is needed to effectively cease implementation of AB 1936 by the College." The complaint refers to tasks such as "changing physical signage, student and faculty email addresses, websites, and other various references to 'Hastings' within the College and its programs and materials," as well as "communicating the new name to prospective students and employers." The College Defendants do not argue that these specific tasks are protected activity, but rather (as they first wrote in the trial court) that the College's implementation of AB 1936 is "inseparable" from its protected activity in describing itself and signifying its values to the world.

But even if these implementation measures were themselves protected

_____

remain the same. Thus, plaintiffs reason, it is AB 1936 that is responsible for their claimed injury.

activity, rather than simply bound up with it, "the remedy sought does not affect whether the claim is based on protected activity." (*Coretronic Corp. v. Cozen O'Connor* (2011) 192 Cal.App.4th 1381, 1392.) In *Coretronic*, the defendant—a law firm sued for allegedly obtaining the plaintiffs' confidential information during an insurance coverage evaluation and using it to benefit another client that was the plaintiffs' adversary in litigation—argued that the suit was a SLAPP in part because the plaintiffs sought to enjoin the firm's continued communications with its client. The court disagreed, finding that the claims arose from the firm's breach of its duties, and the fact that the plaintiffs sought an injunction that would enjoin communication did not alter the nature of the causes of action. (*Ibid.*) Similarly, in this case plaintiffs' claims arise from AB 1936, and the fact that plaintiffs seek injunctive and declaratory relief to prevent the College Defendants from implementing the law does not alter the basis for those claims. The College Defendants argue that *Coretronic* is distinguishable because AB 1936 itself is speech related, and because the complaint asserts separate causes of action for injunctive relief against the College Defendants. But as we have discussed, even assuming that AB 1936 is a speech-related measure, it is the State's speech, not the College Defendants', and the alleged wrongfulness of the College Defendants' implementation of the law is not legally distinct from the alleged wrongfulness of the law itself. Thus, while plaintiffs' claims may adversely affect the College Defendants' future speech, they are based on the enactment of AB 1936.

Since we find that plaintiffs' claims do not arise from any protected activity by the College Defendants under the first prong of the anti-SLAPP analysis, we need not determine whether plaintiffs have shown a probability

14

of prevailing on the merits under the second prong.[7]

## DISPOSITION

The order denying the anti-SLAPP motion is affirmed.  Plaintiffs are entitled to recover their costs on appeal.


                                        GOLDMAN, Acting P. J.


WE CONCUR:

TUCHER, J. [*]
FINEMAN, J. [**]

---

[7] We deny plaintiffs' request for judicial notice because it relates only to the second prong of the anti-SLAPP analysis and is therefore not relevant to our resolution of the appeal.  (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

[*] Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[**] Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | City and County of San Francisco Superior Court |
| Trial Judge: | Honorable Richard B. Ulmer Jr. |
| Counsel for Defendants and Appellants: | GIBSON, DUNN & CRUTCHER, Matthew S. Kahn, Elizabeth K. McCloskey, Theodore J. Boutrous Jr., Theane Evangelis, Matt Aidan Getz<br>UC COLLEGE OF THE LAW, SAN FRANCISCO, John K. DiPaolo, Laura M. Wilson-Youngblood |
| Counsel for Plaintiffs and Respondents: | MICHAEL YAMAMOTO, Gregory R. Michael, Dorothy Yamamoto<br>DHILLON LAW GROUP, Harmeet Dhillon, Mark P. Meuser, Karin Sweigart |